**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**


BERNARD FIDEL, et al.,

                 Plaintiffs,

      v.                                 C-1-00-320
                                       (Consolidated w/ C-1-00-349)

AK STEEL HOLDING CORP., et al.,

                 Defendants.


### ORDER

     This matter is before the Court upon plaintiffs' motion for class certification (doc. 47), opposing memoranda filed by defendant James F. Will (doc. 62) and the remaining defendants (doc. 60), and plaintiffs' reply (doc. 63). The Court heard oral argument on the motion on July 11, 2003.

### I. Procedural history

     Plaintiffs bring claims for (1) violations of § 10(b) of the Securities Exchange Act of 1934 (the 1934 Act) and Rule 10b-5 and § 20(a) of the 1934 Act, (2) violations of §§ 11 and 15 of the Securities Act of 1933 (the 1933 Act), and (3) violations of § 14(a) of the 1934 Act and Rule 14a-9. Plaintiffs base their claims on a series of allegedly false and misleading statements defendants made in various press releases which purportedly led to favorable analyst ratings and reports and to increases in the stock price of AK Steel Holding Corp. (AK Steel). Plaintiffs

allege that the stock price collapsed when AK Steel subsequently reported its fourth quarter and year-end results for 1999 and projected significantly higher operating costs for 2000. Plaintiffs claim that as a result of the false and misleading statements, class and subclass members paid artificially inflated prices for AK Steel stock. Plaintiffs also base their claims against various defendants on false and misleading statements allegedly contained in a Joint Proxy and in oral proxy statements which were an essential link for the 1999 merger of Armco Inc. (Armco) and AK Steel. Plaintiffs claim that the subclass suffered damages as a result of the merger which was approved through the use of the proxy.

Plaintiffs move the Court pursuant to Fed. R. Civ. P. 23(a) and (b)(3) to (1) certify a class consisting of "all persons and entities who purchased or otherwise acquired AK Steel Holding Corporation's publicly traded securities between July 15, 1999 through January 25, 2000 (the Class Period), (2) certify a subclass consisting of "all persons or entities who held Armco Inc. shares as of August 25, 1999, and were thereby entitled to vote to approve the merger with AK Steel, (3) appointing Ironwood Capital Management and Bernard Fidel as class representatives, and (4) approving the law firm of Milberg Weiss Bershad Hynes & Lerach LLP as class counsel and the law firm of Strauss & Troy as trial attorneys and liason counsel for the class.

## II. The Governing Statutes

The Securities Act of 1933 recognizes a private right of action based upon untrue statements or omissions of material fact in security registration statements. See 15 U.S.C. § 77k. The 1933 Act extends liability for such statements or omissions to "controlling persons," defined as including "[e]very person who, by or through stock ownership, agency or otherwise . . ." controls any person liable under 15 U.S.C. § 77k. See 15 U.S.C. § 77o.

The Securities Exchange Act of 1934 further precludes the use of "any manipulative or deceptive device or contrivance" in connection with the purchase or sale of registered securities, as well as the solicitation of proxies in contravention of applicable securities rules and regulations. See 15 U.S.C. §§ 78j(b), 78n(a). Like the 1933 Act, the 1934 Act imposes liability for such violations on "controlling persons." See 15 U.S.C. § 78t(a).

Rule 10b-5 of the Rules and Regulations applicable to the 1934 Act provides as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. In essence, § 10(b) of the 1934 Act and the corollary rule "have the effect of prohibiting the commission of fraud in connection with the sale or purchase of securities." *In re Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir. 1997).

### III. Applicable law

### A. Rule 23 requirements

The party seeking certification of a class bears the burden of establishing the elements of a class action. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1086 (6th Cir. 1996). The district court must conduct a "rigorous analysis" of whether the Rule 23 prerequisites are met before certifying a class. See *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161

(1982). The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23. *American Medical Systems,* 75 F.3d at 1079 (citations omitted).

Rule 23(a) sets forth four prerequisites which the party seeking certification must satisfy before a class can be certified. They are (1) the class must be "so numerous that joinder of all members is impracticable," (2) there must be "questions of law or fact common to the class," (3) "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class," and (4) "the representative parties [must] fairly and adequately protect the interests of the class." These four prerequisites are generally referred to as numerosity, commonality, typicality and adequacy of representation.

With respect to the numerosity requirement, although "the class must be sufficiently defined so that potential class members can be identified, the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action." *Bremiller v. Cleveland Psychiatric Inst.,* 898 F. Supp. 572, 576 (N.D. Ohio 1995)(citing *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976)).

There need only be a single issue common to all members of the class to satisfy the commonality requirement. *American Medical Systems,* 75 F.3d at 1080 (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3.10, at 3-50 (3d ed. 1992)). The mere fact that questions peculiar to each individual member of the class remain after common questions as to defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible. *Id.* (citing *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988)). Not every common question will suffice, however, to establish commonality.

4

The common issue must be such that its resolution will advance the litigation. *Sprague v. G.M. Corp.,* 133 F.3d 388, 397 (6th Cir. 1998); *Bacon v. Honda of America Mfg., Inc.,* 205 F.R.D. 466, 476 (S.D. Ohio 2001)(Graham, J.). The commonality and typicality requirements tend to merge so that a finding of commonality will ordinarily support a finding of typicality. See *Falcon,* 457 U.S. at 157 n. 13.

A plaintiff's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *American Medical Systems,* 75 F.3d at 1082 (citing 1 *Newberg,* § 3-13, at 3-76 (footnote omitted)). The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named class members and those of other class members. *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)(citations omitted); see also *Senter,* 532 F.2d at 525 n. 31 ("To be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.") The typicality requirement determines whether a sufficient relationship exists between the named plaintiffs' injuries and the conduct affecting the class such that the Court "may properly attribute a collective nature to the challenged conduct." *American Medical Systems,* 75 F.3d at 1082. The Sixth Circuit has summarized the typicality standard in this manner: "[A]s goes the claim of the named plaintiff, so go the claims of the class." *Sprague,* 133 F.3d at 399. Typicality is not present where a "named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Bacon,* 205 F.R.D. at 479 (citing *Sprague,* 133 F.3d at 399).

To assess the adequacy of representation, the Court must consider whether the class representatives will "fairly and adequately protect the interests of the class." There are two

prongs to this inquiry: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter,* 532 F.2d at 525 (citing *Gonzales v. Cassidy,* 474 F.2d 67, 73 (6th Cir. 1973)). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." *Bacon,* 205 F.R.D. at 481 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997)).

A class representative is a fiduciary, and the interests of the class are dependent upon the representative's "diligence, wisdom, and integrity." *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 549 (1949). Some courts have accordingly denied class certification where the representative's credibility posed a serious concern. See, e.g., *Kline v. Wolf,* 702 F.2d 400, 401-403 (2d Cir. 1983); *Weinstein v. American Biomaterials Corp.,* 123 F.R.D. 442, 463-65 (S.D.N.Y. 1988); *Zemel Family Trust v. Philips Intern. Realty Corp.,* 205 F.R.D. 434, 437 (S.D.N.Y. 2002).

The Private Securities Litigation Reform Act of 1995 (PSLRA) sets forth detailed procedures governing the appointment of a lead plaintiff in a securities class action. The Act requires the Court to determine which member of a purported plaintiff class is the "most adequate plaintiff" to represent the interests of absent class members. 15 U.S.C. § 78u-4(a)(3)(B)(i). The Act adopts a presumption that the "most adequate plaintiff" is that person or group of persons who "has the largest financial interest in the relief sought by the class" and who otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(1);

6

*Century Bus Servs. Sec. Litig.,* 202 F.R.D. 532, 535 (N.D. Ohio 2001).

Once the prerequisites of Rule 23(a) are satisfied, plaintiffs must also demonstrate that they fall within at least one of the subcategories of Rule 23(b). For plaintiffs to satisfy Rule 23(b)(3), the Court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The pertinent considerations listed under this subsection include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is "far more demanding" than Rule 23(a)'s commonality requirement. *Bacon,* 205 F.R.D. at 486 (citing *Amchem Products,* 521 U.S. at 623-24). Where a finding of liability requires separate proof for each plaintiff, liability is not a predominate issue. *Id.* (citing *Mertens v. Abbott Laboratories,* 99 F.R.D. 38, 41 (D.N.H. 1983)). The prevalence of individual questions likewise weighs against a finding of superiority. *Id.* (citing *American Medical Systems,* 75 F.3d at 1085).

Fed. R. Civ. P. 23(c)(4) provides that "a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

**B. Rule 23 hearing/evidence**

In determining whether to certify a class, the Court must not consider the merits of the action. *In re Cincinnati Radiation Litigation,* 187 F.R.D. 549, 551 (S.D. Ohio 1999)(Beckwith, J.)(citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974)). The question underlying class certification is "not whether . . . the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen,* 417 U.S. at 178 (citing *Miller v. Mackey Internat'l,* 452 F.2d 424 (5th Cir. 1971)). For purposes of a class certification motion, the Court must accept the allegations of the complaint as true. *Cincinnati Radiation,* 187 F.R.D. at 552 (citations omitted). The Court may consider reasonable inferences drawn from the facts before it. *Id.* (citing *Senter,* 532 F.2d at 523).

In resolving a class certification motion, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160. "Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide . . . . The parties should be afforded an opportunity to present evidence on the maintainability of the class action." *Thompson v. Community Ins. Co,* 213 F.R.D. 284, 291 (S.D. Ohio 2002)(citing *In re American Medical Systems,* 75 F.3d at 1079).

**IV. Plaintiffs' arguments in support of class certification**

Plaintiffs allege that because AK Steel stock is traded in an efficient market on the New York Stock Exchange, the reasonable inference is that the proposed class and subclass consist of hundreds and perhaps thousands of investors located throughout the country so that individual joinder of all members is impracticable.

8

Plaintiffs further allege that there are questions of law or fact common to the class which predominate over any questions affecting only individual members, including (1) whether defendants violated the 1933 Act and/or the 1934 Act; (2) whether defendants omitted and/or misrepresented material facts; (3) whether defendants knew or recklessly disregarded that their

statements were false; (4) whether defendants artificially inflated AK Steel's stock price; and (5) the extent, and appropriate measure, of damages. Plaintiffs allege that because the same omissions and misrepresentations were disseminated to the market and thus to all class members through the same reports, proxy statement, and other public statements, the existence and materiality of these alleged omissions and misrepresentations are common, class-wide issues. Plaintiffs also contend that even if individual questions remain after common questions as to defendants' liability have been resolved, that does not dictate a conclusion that a class action is impermissible.

Plaintiffs also contend that the claims asserted are typical of the claims of the class because they arise from the same event or course of conduct that gives rise to claims of other class members, and the claims asserted are based on the same legal theory. Plaintiffs allege that the proposed representative of the class, Ironwood Capital Management (Ironwood), like absent class members, purchased AK Steel securities during the Class Period without knowledge of material adverse facts known to and concealed by defendants and at prices artificially inflated by defendants' materially false and misleading statements and omissions.[1] Plaintiffs claim that the proposed representative of the subclass, Bernard Fidel, like the absent subclass members, acquired AK Steel stock for his Armco stock pursuant to the merger of Armco with AK Steel without knowledge that the price of the AK Steel stock was artificially inflated. Plaintiffs assert that the claims of the proposed class and subclass representatives are therefore typical of those of the other class and subclass members.

---

[1] Ironwood has since withdrawn as lead plaintiff.

Plaintiffs allege that they will fairly and adequately protect the interests of the class. Plaintiffs assert that they have retained counsel experienced in securities class actions. Plaintiffs also contend that there is no antagonism between the representative plaintiffs and the absent class members.

Plaintiffs argue that the conditions of Rule 23(b)(3) have been met in that there are common questions of law or fact which predominate over individual questions. Plaintiffs assert that the same materially false and misleading statements were made to all class and subclass members and that the wrongful activity affected all of the class and subclass members in the same manner; that is, it caused them to purchase AK Steel securities during the Class Period or to exchange their Armco shares for AK Steel shares, all at artificially inflated market prices.

Plaintiffs contend that a class action is superior to other available methods since it will allow common claims and issues to be tried only once with binding effect on all parties, and class representation is the only way to afford relief to those whose claims are too small to permit them to bring individual suits. Plaintiffs assert that they are not aware of any individual actions concerning this dispute that have been commenced by other class members. Plaintiffs also note that they foresee no management difficulties which would preclude this action from being maintained as a class action.

### V. Defendants' arguments in opposition to class certification

In opposition to the motion to certify a class, defendants allege that plaintiffs cannot satisfy the prerequisites of Rule 23(a) for the following reasons: (1) Ironwood has withdrawn as the proposed representative of the § 10(b) class of individuals who purchased AK Steel stock during the Class Period, and Fidel, the proposed representative of the § 11/14(a) subclass of

holders of Armco shares who were entitled to vote to approve the merger with AK Steel, never intended to and cannot represent two separate classes made up of plaintiffs with different claims based upon different legal theories with different standards of proof; (2) Fidel has insurmountable credibility issues which make him inadequate, atypical and subject to unique defenses; (3) Fidel engaged in speculative trading and had to file for bankruptcy protection because of his trading activity; (4) even if credible, Fidel is not qualified to manage a sophisticated major securities class action on behalf of a class and his appointment would completely undermine congressional intent reflected in passage of the PSLRA that class actions should be run by the plaintiff and not by class action attorneys; and (5) Fidel is subject to unique defenses which disqualify him from acting as class representative since he purchased 1000 shares of AK Steel stock in the open market months after filing this lawsuit.

Defendant James F. Will, as to whom only the subclass has a cause of action, argues that plaintiffs should be denied additional time to find replacement class representatives because this case is more than three years old. Will also questions Fidel's knowledge of the lawsuit, noting that Fidel did not name Will as a defendant or mention Armco's proxy when asked to name the defendants in the complaint and discuss the allegations against them at his first deposition. Will also contends that an inherent conflict of interest exists between Fidel and members of the proposed class and subclass in that former shareholders want to maximize recovery and have no interest in the long-term viability of AK Steel, while current AK Steel shareholders such as Fidel should desire that AK Steel remain healthy and continue as a going concern. Will also contends that Fidel was not damaged by the alleged securities law violations because he transferred his AK Steel shares in full to his wife on December 22, 1999, so that he was not a member of the

subclass after that date and could not have suffered any direct harm as a result of the decline in the AK Steel share price on January 26, 2000.

## VI. Opinion

Defendants do not challenge the first and second prerequisites for class certification under Rule 23(a). Rather, they allege that Fidel is not an appropriate class representative because his claims and defenses are not typical of the claims and defenses of the class and he will not fairly and adequately represent the interests of the class.

Defendants initially argue that Fidel should not be appointed lead plaintiff of the § 10(b) class because he has not formally moved the Court to be certified as its representative. In their filings with the Court relating to the class certification issue, plaintiffs did not seek to have Fidel appointed as lead plaintiff for the § 10(b) class. However, plaintiffs clarified at the class certification hearing that Fidel is applying to represent both the § 10(b) class and the § 11/14(a) subclass. Plaintiffs' failure to proffer Fidel as lead plaintiff for the § 10(b) class in their written submissions does not bar plaintiffs from now proffering Fidel as the lead plaintiff for both the class and the subclass. Accordingly, the Court will consider whether Fidel satisfies the adequacy and typicality requirements of a class representative for both the class and the subclass.

Defendants allege that Fidel is an inadequate class representative because he is a professional plaintiff who has demonstrated a lack of knowledge about this litigation and an inability to direct and control the litigation. As examples, they note that Fidel testified that he did not know the identity of his local Ohio counsel and had never talked to them, and he had no idea of the difference between the initial and amended complaints; Fidel mistakenly believes that the motion to certify the class seeks to have him appointed as representative of both the class and the subclass; and Fidel's current involvement in three securities class actions in which Milberg Weiss is acting as his counsel creates an attorney-client relationship that is "too strong to

14

maintain the independence needed between an attorney and his clients about matters relating to the conduct of a class action." (Doc. 60, p. 24).

Plaintiffs challenge defendants' examples of Fidel's lack of knowledge of the lawsuit as insignificant. Plaintiffs also argue that Fidel's losses in the three cases in which he is serving as lead plaintiff and the one case in which he is seeking to serve as lead plaintiff are substantial and that Fidel is involved in fewer than the five cases allowed under the express language of the PSLRA.

The Court finds that Fidel should not be prohibited from serving as lead plaintiff based simply on the fact that he is currently involved in three other securities fraud actions in which current class counsel is serving as class counsel. Defendants have not shown how Fidel's involvement in those other cases necessarily eviscerates the independence needed between counsel and Fidel about matters relating to the conduct of this action. Moreover, defendants do not contest plaintiffs' representation that Fidel's stake in those other lawsuits is substantial, so there is no apparent reason to question the legitimacy of Fidel's involvement therein.

Second, defendants also have not shown that Fidel is so lacking in knowledge of the claims and supporting facts in this case that he cannot adequately serve as class representative. Fidel's inability to name local counsel and the other omissions cited by defendants are minor and do not warrant denying Fidel lead plaintiff status.

Defendants also allege that Fidel is not an adequate class representative because he is not credible. Defendants cite the following as evidence of Fidel's lack of credibility:

1)    Fidel has admitted that the sworn certification he submitted to the Court in connection with his motion to be appointed lead plaintiff (doc. 5, exh. 2) was false in that it failed to disclose seven transactions in AK Steel and Armco securities during the Class Period.

2)    Fidel misled the Court by representing in the lead plaintiff motion that his total loss with respect to AK Steel stock was $430,474.98.

3)    Fidel failed to disclose at his initial deposition that he had filed a Chapter 7 bankruptcy petition and his reason for the omission is not credible.

4)    Fidel made false statements in his bankruptcy petition and filings.

Defendants argue that Fidel's lack of credibility subjects him to unique defenses and he will be required to spend much of his time in this lawsuit defending himself.

Plaintiffs argue that defendants' attack on Fidel's credibility is an impermissible attempt to adjudicate the merits of this litigation at the class certification stage. Plaintiffs contend that defendants' credibility challenges are based upon mistakes or miscommunications rather than intentional untruths and are thus insufficient to render Fidel an inadequate or atypical class representative. Plaintiffs note that Fidel provided a declaration identifying his bankruptcy filing to defense counsel after reviewing his initial deposition transcript. Plaintiffs also claim that Fidel's omission of four AK Steel stock sales from his PSLRA certification was unintentional and that he rectified the mistake by disclosing each of these transactions to defense counsel prior to his deposition as part of discovery and discussing the transactions at his deposition. Plaintiffs contend that courts have rejected far stronger attacks on the credibility of proposed class representatives. Plaintiffs also aver that Fidel's errors in his bankruptcy petition were unintentional and that defendants' attacks on the accuracy of the bankruptcy petition are

contradicted by Fidel's deposition testimony.

The Court believes that Fidel has adequately explained some of the misstatements as mistakes which he subsequently corrected, and some of the alleged misstatements and omissions are not material to the certification issue because they do not directly relate to this action. However, the Court finds that the numerous misstatements and omissions, some of which are serious and relate directly to this action, taken together call into question Fidel's ability to deal forthrightly with the Court and to capably conduct a lawsuit of this magnitude. The Court will address this concern below in conjunction with the issue of whether Fidel's claims and defenses are typical of those of the class he seeks to represent.

Defendants argue that Fidel's § 11 and § 14 claims are not typical of the claims of the absent class members who have § 10(b) claims. Defendants allege that members of the class and subclass acquired their stock in different ways (on the open market versus through the merger), relied on different representations (statements made to analysts and in press releases versus statements in the joint proxy/prospectus), assert different legal claims, are subject to different burdens of proof (fraud and reliance versus strict liability under § 11), and allegedly have been damaged in different ways. Defendants also argue that Fidel's position makes it impossible for him to zealously represent both the class and the subclass. See *In re HealthSouth Corporation Securities Litigation,* 213 F.R.D. 447 (N.D. Ala. 2003). As an example, defendants argue that Fidel could face a settlement proposal to resolve the strict liability § 11 claims which may provide no compensation to members of the § 10(b) class who have to show scienter. They assert that under that scenario, Fidel would be forced to decide between taking a sure return on his § 11 claim by way of a settlement and releasing the § 10(b) claims, or risk going to trial on all claims

in order to secure a recovery for both classes. Defendants allege that plaintiffs themselves have

noted the necessity of creating separate classes in order to avoid potential conflicts among class members so that there cannot be a single representative of both the § 10(b) class and the § 11/14(a) class.

Plaintiffs cite the Court to numerous cases for the proposition that a plaintiff can properly serve as class representative for both § 10(b) and § 11 claims asserted in the same action. Plaintiffs also argue that there is no conflict between investors who purchased AK Steel stock in the open market and those who acquired AK Steel stock as a result of the Armco merger since all claims result from the same unlawful conduct and all class members were damaged in the same manner. Plaintiffs allege that *HealthSouth* is distinguishable from this case. Plaintiffs note that the Court there held that open-market purchasers could not adequately represent class members who received their shares through a merger because the open market purchasers lacked standing to bring § 11 claims of class members who received their shares through an offering. Plaintiffs note that in contrast, Fidel, as a plaintiff who exchanged his Armco stock for AK Steel stock at an artificially inflated price as part of an offering, has standing to assert and has asserted all claims on behalf of all class members.

The Court perceives no absolute bar to plaintiffs pursuing both § 11 and § 10(b) claims in the same lawsuit. The question, however, is whether Fidel can adequately represent both the class and the subclass who assert these different claims in this lawsuit. Defendants rely on the decision in *Healthsouth,* 213 F.R.D. 447, in support of their argument that Fidel cannot adequately represent both classes.

The proposed class in *Healthsouth* consisted of persons who had purchased or otherwise acquired securities of *Healthsouth* during the class period, including those persons who had

19

acquired their securities as the result of two separate mergers. The plaintiffs alleged that during the class period, Healthsouth had engaged in a fraud on its investors by making false statements about Healthsouth's true financial state which artificially inflated the price of Healthsouth stock. The court identified three distinct groups within the class, including those who had obtained their shares on the open market and those who had acquired their shares through the mergers. The district court for the Northern District of Alabama declined to certify a class on numerous grounds, including its determination that the claims of certain class representatives were atypical of the claims of some class members in various ways. Of relevance to the present case, the Court in **Healthsouth** found that the open market representatives were not injured by Healthstock's use of allegedly inflated stock to acquire other companies in a merger, but actually benefited from the transactions by acquiring assets with inflated stock dollars and thereby acquiring more value for the stock paid. The Court therefore determined that the open market representatives did not have standing to assert the claims of those who had acquired the shares through the merger and who claimed that they had been damaged by the exchange of valuable shares in the other entities for less valuable Healthsouth stock. The Court found that this conflict and other conflicts among the representatives, among subclasses, and between the representatives and the class as a whole were too great to ignore and negated the adequacy of representation.

In this case, the Court does not believe that the potential conflict between the interests of those who acquired their AK Steel stock through the Armco merger and those who purchased their shares on the open market is sufficient to preclude Fidel from adequately representing both the class and the subclass, or that the potential conflict renders him an atypical member of the class. The Court believes this case differs from **Healthsouth** in that Fidel alleges that he suffered

the same injury as those who acquired their AK Steel shares on the open market during the Class Period. That is, all class members acquired their AK Steel shares at purportedly artificially inflated prices and were injured when the price of those shares plummeted. Thus, although the open market purchasers may have benefited in some respects by the acquisition of Armco with allegedly artificially inflated stock, those open market purchasers who continued to hold their shares were damaged in the same manner as those who acquired their shares in the merger when the stock price plunged following the merger. For this reason, and because the same purported misrepresentations adversely affected the open market purchasers and the members of the subclass, the Court finds that the different methods of acquisition do not bar the same individual from representing both classes.

Defendants also assert that Fidel's purchase of AK Steel stock less than five months after he filed the amended complaint in this case raises questions as to whether he relied on the alleged misrepresentations at issue. Plaintiffs argue that the cases cited by defendants are the clear minority view and distinguish *Ballan,* 159 F.R.D. at 481, on the ground that the price for the shares purchased during and after the class period was the same in that case so as to call into question the plaintiff's claim that the stock price was artificially inflated during the class period.

The Court finds that Fidel's purchase of AK Steel stock following the filing of this lawsuit does not make him an inadequate or atypical class representative. The subsequent purchase has no bearing on whether the price of the stock, which was significantly higher when Fidel acquired it in connection with the merger than it was when Fidel subsequently purchased it following the filing of this lawsuit, was artificially inflated during the Class Period as a result of misrepresentations and omissions by defendants and whether Fidel relied on those

misrepresentations and omissions.

Defendants further argue that Fidel will be subject to unique defenses by virtue of the fact that he disposed of all of his AK Steel shares prior to the end of the Class Period and before the alleged truth was disclosed to the market on January 25, 2000. Plaintiffs claim that Fidel's transfer of his shares of AK Steel stock to his wife does not make him an atypical or inadequate class representative because he purchased the stock and the appropriate plaintiff in a federal securities action is the purchaser of the securities in issue. Plaintiffs argue that because Fidel and not his wife acquired the shares at an artificially inflated price, he is the proper plaintiff and his Certification properly included the shares transferred to his wife. Plaintiffs also contend that Fidel at all times had full power to control and manage his wife's account and to execute trades on her behalf, so that he has full power to seek relief under the federal securities laws for losses sustained on the account. Plaintiffs argue that because Fidel actually owned all of the AK Steel shares at the time they were acquired and at all times managed his wife's account, he is the appropriate plaintiff.

The record shows that in the "Certification of Named Plaintiff Pursuant to Federal Securities Laws" filed with the Court on June 19, 2000, Fidel listed only one AK Steel stock transaction which took place during the Class Period, that being the acquisition of 50,466 shares of AK Steel common stock on October 4, 1999, at a price of $18.210 per share. Consistent with the Certification, in plaintiffs' motion to appoint Fidel as lead plaintiff on the § 11/14(a) claims, plaintiffs represented to the Court that Fidel has the single largest loss under those provisions, a total of $430,474.98. Also consistent with the Certification, plaintiffs submitted in support of the motion a chart of Fidel's losses reflecting that the total price of his shares as of the date of the

merger was $918,985.86 and calculating his total loss by subtracting from that figure the number

of shares held at the end of the class period multiplied by the average share price during the 90

trading days after the end of the class period ($9.68) (doc. 5, exh. 1). In fact, although plaintiffs

consistently represented to the Court that Fidel held all of the shares of AK Steel he had acquired

as of the end of the Class Period, it is undisputed that Fidel had sold 10,066 shares of the stock

during the Class Period at a loss of approximately $22,000 and that he had transferred another

40,400 shares to his wife on December 22, 1999, one month prior to the end of the Class Period.

Plaintiffs attempt to minimize Fidel's omissions in this regard and argue that Fidel's sale

and transfer of the shares does not affect his standing as an adequate and typical class

representative. Plaintiffs liken Fidel to an investment advisor in that he had power-of-attorney

over the shares transferred to his wife and sold them on her behalf. Plaintiffs cite several cases in

support of their position that as the purchaser of the AK shares in issue, Fidel is an appropriate

class representative despite the fact that he no longer held those shares in his own name at the

close of the Class Period. Some of the cited cases recognize that an investment advisor or

banking entity with delegated authority to make investment decisions for clients is deemed a

purchaser under the securities laws and may bring an action in its own name. See e.g. ***The Ezra

Charitable Trust v. Rent-Way, Inc.,*** 136 F.Supp.2d 435 (W.D. Pa. 2001); ***Newman v. Eagle

Building Technologies,*** 209 F.R.D. 499 (S.D. Fla. 2002); ***Roth v. Knight Trading Group, Inc.,***

228 F.Supp.2d 524 (D. N.J. 2002); ***Monetary Management Group of St. Louis, Inc. v. Kidder,

Peabody & Co., Inc.,*** 604 F.Supp. 764 (E.D. Mo. 1985). The holdings in these cases, however,

neither excuse Fidel's omissions nor support a finding that Fidel is an appropriate lead plaintiff

in this case. Fidel was not functioning as an investment advisor on behalf of his wife or any other

23

individual or entity at the time he acquired his shares of AK Steel stock. Moreover, the cited cases do not establish the proposition that an individual who has power-of-attorney over securities owned by a third party has standing to sue for losses incurred by the third party upon the sale of those securities. Accordingly, credibility issues aside, there is a substantial issue concerning the loss that Fidel can claim which subjects him to a unique defense; i.e., that he suffered a substantially smaller loss than he alleges as a result of defendants' purported misrepresentations and omissions. The availability of this defense against Fidel is, in the Court's opinion, of such significance that it renders Fidel an atypical class representative.

Fidel's failure to disclose the transfer of stock to his wife is significant for another reason. If Fidel's damages are measured as of the time he sold his shares of AK Steel and transferred the remainder to his wife, then his stake in the lawsuit decreases dramatically, and it is no longer clear that he is the individual or entity who suffered the greatest loss. Thus, Fidel's appropriateness as lead plaintiff is called into question and the rebuttable presumption created under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(1), that "the most adequate plaintiff . . .is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class," no longer necessarily applies to Fidel.

Finally and most importantly, Fidel's course of conduct demonstrates that Fidel has been less than forthright with the Court. The chart of losses submitted by Fidel, which calculates his losses based on ownership of the AK Steel shares at the conclusion of the Class Period, certainly conveys to the reader that Fidel owned all of the shares acquired in the merger as of that date. Fidel did not disclose to the Court in either the chart or in his Certification that he had sold 10,066 shares of AK Steel stock that he had received in the merger between October 21, 1999

24

and December 6, 1999 when the stock was trading in the range of $15.1875 to $17.4375 per share. While plaintiffs argue that this was a mere oversight which Fidel rectified during discovery, the fact remains that Fidel has failed to fulfill his responsibility to provide accurate information to the Court, and plaintiffs' explanation does little to allay the Court's concern that Fidel has not been totally forthright in divulging pertinent information.

Nor did Fidel disclose to the Court in his Certification that he had transferred his remaining shares of AK Steel stock to his wife during the Class Period. Fidel's belated explanation for his failure to reflect the transfer in the documents submitted to the Court (i.e., he has standing to sue on his wife's behalf and he felt that the stock over which he had power-of-attorney "was, in essence, still his to include on the certification" (doc. 63, p. 13) simply does not satisfy the Court that the omission was a mere, negligible oversight. Plaintiffs have not satisfactorily explained why Fidel failed to reflect the transfer of shares to his wife on the Certification and to leave the task of ascertaining the legal significance of the transfer to the Court. Even if the omission can be characterized as a simple oversight, Fidel's failure to advise the Court of the stock sales and transfer, when considered in the context of the numerous other omissions and misstatements by him, leads that the Court to conclude that Fidel is not an appropriate individual to handle the important responsibilities of a lead plaintiff in this litigation.

For all of these reasons, the Court finds that plaintiffs have not satisfied each of the prerequisites for certification of a class set forth in Rule 23(a). The Court will therefore deny the motion for class certification at this time. Because defendants have not shown that they will be unduly prejudiced if plaintiffs are allowed a short period of time in which to proffer new representatives for the class and subclass, the Court will grant plaintiffs that opportunity.

25

**VII. Conclusion**

Plaintiffs shall have **thirty (30)** days to proffer new representatives for the class and subclass. Plaintiffs' motion for class certification is **DENIED** without prejudice to resubmission upon the proffering of class and subclass representatives.

**IT IS SO ORDERED.**


S/Herman J. Weber

_____
HERMAN J. WEBER, SENIOR JUDGE
UNITED STATES DISTRICT COURT

J:\HJWA\00-320classcert.