UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | | |
|---|---|---|
| BERNARD FIDEL, et al., On Behalf of Themselves and All Others Similarly Situated, | ) ) | Lead Case No.  C-1-00-320 (Consolidated with No.  C-1-00-349) |
| Plaintiffs, | ) ) ) | Judge Herman J.  Weber |
| vs. | ) ) | CLASS ACTION |
| AK Steel HOLDING CORPORATION, et al., | ) ) | |
| Defendants. | ) ) ) ) | |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE PROPOSED SETTLEMENT,
PLAN OF ALLOCATION AND APPLICATION OF PLAINTIFFS' COUNSEL
FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

STRAUSS & TROY
RICHARD S.  WAYNE (0022390)
WILLIAM K.  FLYNN (0029536)
Federal Reserve Building
150 East Fourth Street
Cincinnati, OH  45202-4018
Telephone:  513/621-2120

Liaison Counsel

LERACH COUGHLIN STOIA
  & ROBBINS LLP
WILLIAM S.  LERACH
HELEN J.  HODGES
EDWARD P.  DIETRICH
JEFFREY D. LIGHT
SCOTT H.  SAHAM
TRICIA L.  McCORMICK
401 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/231-1058

Lead Counsel for Plaintiffs

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF POINTS AND AUTHORITIES ......................1

    A.      The Proposed Settlement Should Be Approved Because It Is Fair, Reasonable, and Adequate ......................................................................................3

    B.      Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees and Expenses ...........................................................................................................4

II.     STATEMENT OF FACTS ........................................................................................5

    A.      The Litigation.........................................................................................................7

    B.      Summary of the Settlement....................................................................................9

    C.      Due Notice of the Pendency of the Class Action and of the Proposed Settlement Has Been Appropriately Given...........................................................10

III.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED BY THE COURT ........11

    A.      The Settlement Is Fair, Reasonable, and Adequate ..............................................11

        1.      The Standards For Judicial Approval of Class Action Settlements...........11

    B.      Evaluation of the Proposed Settlement..................................................................13

        1.      The Likelihood of Success on the Merits ..................................................13

        2.      The Complexity, Expense, and Likely Duration Favors Settlement .........16

        3.      Stage of Proceedings and Extent of Discovery.........................................18

        4.      The Settlement Is the Result of "Arm's-Length" Negotiations Among Competent and Experienced Counsel ...........................................19

        5.      The Reaction of the Class to the Settlement ..............................................20

        6.      The Public Interest Favors Settlement .......................................................20

        7.      The Plan of Allocation is Fair and Reasonable and Should be Approved...................................................................................................21

IV.     THE REQUESTED FEE AND EXPENSE AWARD IS FAIR AND REASONABLE ........................................................................................................22

    A.      Plaintiffs' Counsel Are Entitled to a Fee From the Traditional Common Fund They Obtained .............................................................................................22

Page

B.  The Court Should Award Attorney's Fees Using the Percentage Approach.........24

C.  The Requested Fee Award Is Well Within the Applicable Range of Percentage of Fund Awards ...................................................................................26

D.  Fee Awards in the Sixth Circuit................................................................................27

E.  Application of the *Ramey* Factors...........................................................................29

    1.  The Value of the Benefit Achieved ...........................................................29

    2.  Public Policy Considerations .....................................................................29

    3.  The Risks of Litigation and the Contingent Nature of the Fees ...............30

    4.  The Value of Services on an Hourly Basis ................................................32

    5.  The Complexity of the Litigation ..............................................................34

    6.  The Quality of the Representation .............................................................34

F.  Plaintiffs' Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ..............................................................35

V.  CONCLUSION..........................................................................................................38

# TABLE OF AUTHORITIES

**Page**

*Abrams v. Lightolier, Inc.*,
    50 F.3d 1204 (3d Cir. 1995)..................................................................36

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ..............................................................31

*Arenson v. Board of Trade*,
    372 F. Supp. 1349 (N.D. Ill. 1974) .......................................................35

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990)..............................................................16, 31

*Basile v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    640 F. Supp. 697 (S.D. Ohio 1986) ................................................30, 32

*Bateman Eichler, Hill  Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)............................................................................22

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979)................................................................16

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ..............................................................31

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989)..............................................................................24

*Bleznak v. C.G.S. Scientific Corp.*,
    387 F. Supp. 1184 (E.D. Pa. 1974) .....................................................29

*Blum v. Stenson*,
    465 U.S. 886 (1984)..................................................................24, 25, 26

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)............................................................................22

*Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*,
    778 F.2d 890 (1st Cir. 1985)................................................................33

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
    8 F.3d 722 (10th Cir. 1993) ................................................................36

*Bronson v. Board of Educ.*,
    604 F. Supp. 68 (S.D. Ohio 1984) .................................................11, 12

**Page**

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 894 (S.D. Ohio 2001) ....................................................................11, 20

*Bryant v. Avado Brands, Inc.*,
   100 F. Supp. 2d 1368 (M.D. Ga. 2000) ..............................................................17

*Camden I Condominium Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) .............................................................................25

*Castellano v. Young & Rubicam, Inc.*,
   257 F.3d 171 (2d Cir. 2001)..................................................................................15

*Central R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885)...............................................................................................24

*Chemical Bank v. City of Seattle (In re Washington Pub.
Power Supply Sys. Sec. Litig.)*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................................25

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..................................................................................12

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .......................................................................3, 11, 19

*Dolgow v. Anderson*,
   43 F.R.D. 472 (E.D.N.Y. 1968) ..........................................................................23

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)...............................................................................................11

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
   137 F.R.D. 240 (S.D. Ohio 1991) ..................................................................11, 33

*Florin v. Nationsbank, N.A.*,
   34 F.3d 560 (7th Cir. 1994) ..................................................................................25

*Fournier v. PFS Invs.*,
   997 F. Supp. 828 (E.D. Mich. 1998).....................................................................33

*Geffon v. Micrion Corp.*,
   249 F.3d 29 (1st Cir. 2001)....................................................................................31

**Page**

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ........................................................................................25

*Granada Investments, Inc. v. DWG Corp.*,
    823 F. Supp. 448 (N.D. Ohio 1993)..................................................................3, 11, 12

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) ........................................................................................31

*Griffin v. Medpartners, Inc.*,
    No. CV98-297 (Cir. Ct. Ala. July 10, 1999)................................................................26

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...........................................................................................36

*In re American Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)..........................................................................15

*In re Apple Computer Sec. Litig.*,
    [1992 Transfer Binder] Fed. Sec. L. Rep.
    (CCH) ¶96,252 (N.D. Cal. 1991)..................................................................................16

*In re Art Materials Antitrust Litig.*,
    100 F.R.D. 367 (N.D. Ohio 1983) .....................................................................11, 16, 19

*In re Art Materials Antitrust Litig.*,
    MDL No. 436, 1983 U.S. Dist. LEXIS 10434
    (N.D. Ohio Dec. 27, 1983)............................................................................................32

*In re Beverly Hills Fire Litig.*,
    639 F. Supp. 915 (E.D. Ky. 1986) ...............................................................................33

*In re Chicken Antitrust Litig.*,
    810 F.2d 1017 (11th Cir. 1987) ....................................................................................21

*In re Cincinnati Gas & Elec. Co. Sec. Litig.*,
    643 F. Supp. 148 (S.D. Ohio 1986) .............................................................................26

*In re Cincinnati Microwave, Inc. Sec. Litig.*,
    No. C-1-95-905 (S.D. Ohio Mar. 21, 1997) ..............................................................4, 26

*In re Comshare, Inc. Sec. Litig.*,
    183 F.3d 542 (6th Cir. 1999) ...................................................................................13, 31

**Page**

*In re Digi Int'l, Inc. Sec. Litig.*,
   14 Fed. Appx. 714 (8th Cir. 2001)....................................................31

*In re Dun & Bradstreet Credit Services Customer Litig.*,
   130 F.R.D. 366 (S.D. Ohio 1990) ............................................ *passim*

*In re F&M Distrib., Inc. Sec. Litig.*,
   No. 95-CV-71778, 1999 U.S. Dist. LEXIS 11090
   (E.D. Mich. June 29, 1999)..................................................24, 26

*In re Future Healthcare Sec. Litig.*,
   No. C-1-95-180 (S.D. Ohio Dec. 5, 2000)................................4, 26

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)........................................................25

*In re General Public Utilities Sec. Litig.*,
   [1983-84 Transfer Binder] Fed. Sec. L. Rep.
   (CCH) ¶99,566 (D.N.J. 1983) ....................................................4

*In re Gibson Greetings Sec. Litig.*,
   No. C-1-95-265 (S.D. Ohio Feb. 7, 1997) .................................26

*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166 (E.D. Pa. 2000)................................................17

*In re King Resources Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976).......................................34, 35

*In re Nat'l Student Mktg. Litig.*,
   68 F.R.D. 151 (D.D.C. 1974).....................................................17

*In re Nord Resources Corp. Sec. Litig.*,
   No. C-3-90-380 (S.D. Ohio Apr. 28, 1994)..............................4, 26

*In re PaineWebber Ltd. Partnership Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1977),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997) ......................................15, 21

*In re Proctor & Gamble Company Sec. Litig.*,
   No. 1-00-190 (S.D. Ohio Dec. 20, 2001)....................................4

*In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)......................................................18

**Page**

*In re Revco Sec. Litig.*,
  [1997 Transfer Binder] Fed. Sec. L. Rep.
  (CCH) ¶96,956 (N.D. Ohio 1992) ...............................................................................4, 27

*In re RJR Nabisco Sec. Litig.*,
  No. 818, 1992 U.S. Dist. LEXIS 12702
  (S.D.N.Y. Aug. 24, 1992)...............................................................................................33

*In re Safety Components Int'l, Inc.*,
  166 F. Supp. 2d 72 (D.N.J. 2001) ..................................................................................32

*In re Silicon Graphics Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ..........................................................................................31

*In re SmithKline Beckman Corp. Sec. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990) ............................................................................27, 35

*In re Structural Dynamics Research Corp. Sec. Litig.*,
  No. C-1-94-630 (S.D. Ohio Mar. 22, 1996) ...............................................................4, 26

*In re Telectronics Pacing Systems, Inc.*,
  137 F. Supp. 2d 1029 (S.D. Ohio 2001) ....................................................................4, 33

*In re Telectronics Pacing Systems, Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................. *passim*

*In re Thirteen Appeals Arising out of*
 *San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995)..............................................................................................25

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989)...................................................................................32

*In re Valley Sys. Sec. Litig.*,
  No. 5:92cv2124 (N.D. Ohio Mar. 16, 1994)....................................................................26

*In re Valley Systems Sec. Litig.*,
  No. 5:92-CV-2124 (N.D. Ohio Mar. 16, 1994) .................................................................5

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964).........................................................................................................23

**Page**

*Johnston v. Commerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ...........................................................................25

*Kogan v. Aimco Fox Chase, L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) ..............................................12, 18, 19, 20

*Lachance v. Harrington*,
   965 F. Supp. 630 (E.D. Pa. 1997) ..................................................................26

*Levitin v. PaineWebber, Inc.*,
   159 F.3d 698 (2d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) ....................31

*Lewis v. Newman*,
   59 F.R.D 525 (S.D.N.Y. 1973) .......................................................................17

*Longman v. Food Lion Inc.*,
   197 F.3d 675 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000)....................31

*Mashburn v. National Healthcare, Inc.*,
   684 F. Supp. 679 (M.D. Ala. 1988) ..................................................23, 27, 35

*Maywalt v. Parker & Parsley Petroleum Co.*,
   No. 92 Civ. 1152, 1997 U.S. Dist. LEXIS 97
   (S.D.N.Y. Jan. 6, 1997)..................................................................................21

*McKittrick v. Gardner*,
   378 F.2d 872 (4th Cir. 1967) ........................................................................30

*Miller v. Woodmoor Corp.*,
   [1979 Transfer Binder] Fed. Sec. L. Rep.
   (CCH) ¶96,853 (D. Colo. Sept. 28, 1978) ......................................................34

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993)..................................................................36

*Missouri v. Jenkins*,
   491 U.S. 274 (1989).......................................................................................26

*Mokover v. Neco Enterprises, Inc.*,
   No. 89-0505B, 1992 WL 41555 (D.R.I. Mar. 2, 1992) ...................................28

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).......................................................................................11

**Page**

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999) ...................................................31

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974) ...................................4, 28, 29, 32

*Randall v. Loftsgaarden*,
    478 U.S. 647 (1986)..................................................................15

*Rawlings v. Prudential-Bache Properties, Inc.*,
    9 F.3d 513 (6th Cir. 1993) ...........................................4, 24, 27, 33

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992).............................................23

*Robbins v. Koger Props. Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...........................................16, 31

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997)..........................................33

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999)......................................................25

*Silver v. H&R Block*,
    105 F.3d 394 (8th Cir. 1997) ...................................................31

*Sirota v. Solitron Devices, Inc.*,
    673 F.2d 566 (2d Cir. 1982)......................................................15

*Slomovics v. All for a Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ..........................................27

*Smillie v. Park Chemical Co.*,
    710 F.2d 271 (6th Cir. 1983) ...............................................4, 28

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939)..................................................................24

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993)..............................................25, 26

**Page**

*TBK Partners, Ltd. v. Warshow,*
   [1977-78 Transfer Binder] Fed. Sec. L. Rep.
   (CCH) ¶96,196 (S.D.N.Y. Oct. 5, 1977) .......................................36

*TSC Industries, Inc. v. Northway, Inc.,*
   426 U.S. 438 (1976)...............................................................14

*Trans World Airlines, Inc. v. Hughes,*
   312 F. Supp. 478 (S.D.N.Y. 1970),
   *modified*, 449 F.2d 51 (2d Cir. 1971),
   *rev'd*, 409 U.S. 363 (1973)......................................................16

*Trustees v. Greenough,*
   105 U.S. 527 (1882)...........................................................22, 24

*Walsh v. Great Atlantic & Pacific Tea Co.,*
   726 F.2d 956 (3d Cir. 1983)....................................................21

*Ward v. Succession of Freeman,*
   854 F.2d 780 (5th Cir. 1988) ..................................................31

*In re Warner Communications Sec. Litig.,*
   618 F. Supp. 735 (S.D.N.Y. 1985)..........................................30, 35

*Weiss v. Drew Nat'l Corp.,*
   465 F. Supp. 548 (S.D.N.Y. 1979)............................................27

*Weseley v. Spear, Leeds & Kellogg,*
   711 F. Supp. 713 (E.D.N.Y. 1989) ..........................................33

*West Virginia v. Chas. Pfizer & Co.,*
   314 F. Supp. 710 (S.D.N.Y. 1970),
   *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ..........................................16

*White v. Abrams,*
   495 F.2d 724 (9th Cir. 1974) ..................................................29

*White v. Nat'l Football League,*
   822 F. Supp. 1389 (D. Minn. 1993),
   *aff'd*, 41 F.3d 402 (8th Cir. 1994) .............................................21

*Williams v. First National Bank,*
   216 U.S. 582 (1910).............................................................11

**Page**

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ........................................................................3, 11, 12, 13

*Wilson v. Bank of Am. Nat'l Trust & Sav. Ass'n*,
    No. 643872 (Cal. Super. Ct. Aug. 16, 1992) ...................................................33

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b)..........................................................................................................13, 15
    §78u-4(a)(3) .................................................................................................8, 37
    §78u-4(a)(6) ....................................................................................................24

Federal Rules of Civil Procedure
    Rule 23 ...........................................................................................................11
    Rule 23(e).......................................................................................................11

17 C.F.R.
    §240.10b-5 .....................................................................................................13

## SECONDARY AUTHORITIES

2 Herbert Newberg & Alba Conte,
    *Newberg on Class Actions*, §11.48 (3d ed. 1992)............................................20

Denise N. Martin, Vinta M. Juneja, Todd S. Foster, Frederick C. Dunbar,
*Recent Trends IV: What Explains Filings and Settlements
in Shareholder Class Actions?* (NERA Nov. 1996) ........................................5

Thomas E. Willging, Laurel L. Hooper & Robert J. Niemic,
*Empirical Study of Class Actions in Four Federal District Courts:
Find Report to the Advisory Committee on Civil Rules,*
(Federal Judicial Center 1996).......................................................................27

Third Circuit Task Force, *Court Awarded Attorney Fees*,
    108 F.R.D. 237 (Oct. 8, 1985) .......................................................................25

## I.    INTRODUCTION AND SUMMARY OF POINTS AND AUTHORITIES

Plaintiff submits this memorandum in support of (i) the proposed settlement (the "Settlement") of this consolidated class action (the "Action" or the "Litigation") as set forth in the Stipulation of Settlement, dated March 26, 2004 (the "Stipulation"), on behalf of all persons who purchased or otherwise acquired the common stock of AK Steel Holding Corporation ("AK Steel" or the "Company") during the period from July 15, 1999 through January 25, 2000 (including all persons who held Armco, Inc. shares as of August 25, 1999 and were thereby entitled to vote to approve the Merger with AK Steel) (the "Class" and the "Class Period," respectively); (ii) the proposed Plan of Allocation of settlement proceeds; and (iii) the application of plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses (the "Fee and Expense Application"). Plaintiffs' Counsel are also concurrently filing the Declaration of Helen J. Hodges which sets forth in more detail the history of the litigation and the factors bearing on the reasonableness of the Settlement, Plan of Allocation and Fee and Expense Application.

Plaintiffs' counsel have achieved a settlement that is a very good result for the Class given the obstacles plaintiffs faced in establishing Defendants' liability and proving damages. The proposed Settlement provides for a settlement fund of Four Million Dollars ($4,000,000), in cash, plus interest earned thereon (the "Settlement Fund"). Pursuant to this Court's Order entered on March 31, 2004 (the "Preliminary Order"), Class Members have been provided with the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") which describes the terms of the Settlement, the Plan of Allocation of settlement proceeds and plaintiffs' counsel's application for an award of attorneys' fees and reimbursement of expenses. The Notice stated that any objections to the proposed Settlement, the Plan of Allocation of settlement proceeds or the Fee and Expense Application must be filed with the Court and served upon counsel by June 28, 2004. This deadline

has now passed and not a single objection to the proposed Settlement, the Plan of Allocation, or the Fee and Expense Application has been received by plaintiffs' counsel.

Plaintiffs' counsel believe that the Settlement Fund created for the benefit of the Class in this case is a very favorable result, a fact which is affirmed by the absence of any objections. The proposed Plan of Allocation has been designed by Lead Counsel with the assistance of their damage expert to be a simple and straightforward reflection of the potential damages.

The proposed Settlement is the result of hard-fought litigation and was achieved only after extensive and vigorous arm's-length negotiations by highly experienced counsel on both sides. Negotiations did not take place until after Defendants' motions to dismiss were decided by the Court and plaintiffs' counsel had conducted an extensive investigation into the facts and the law supporting plaintiffs' claims and thoroughly evaluated the risks of continued litigation. The settlement negotiations extended over several months. During the on-going settlement negotiations, plaintiffs' counsel continued to diligently prosecute this litigation against Defendants and made it clear that they would continue to litigate rather than settle for less than fair value.

Plaintiffs' counsel, who are well respected and experienced in prosecuting securities class actions believe that the Settlement represents a very favorable resolution of a difficult case involving significant risk of no recovery, and should, therefore, be approved by the Court. This conclusion is based on, among other things, the substantial risks and expense presented in continuing this litigation, the Court's order granting in part and denying in part Defendants' motions to dismiss, a complete analysis of the evidence obtained to date, past experience in litigating complex actions similar to the present action and the serious disputes between the parties concerning the merits and damages.

Plaintiffs' counsel's efforts to date have been without compensation of any kind and any fee has been wholly contingent upon the results achieved. This litigation is subject to the provisions of

the Private Securities Litigation Reform Act of 1995 ("PSLRA") and therefore, was extremely risky and difficult from the outset. Plaintiff's counsel's efforts were performed, and the result achieved, despite significant risk and in the face of determined and formidable opposition. As a result, plaintiff's counsel apply for an award of attorneys' fees of twenty-five percent (25%) of the Settlement Fund plus expenses incurred in the prosecution of the litigation in the amount of $250,040.65 plus interest for a total of 31.25% of the Settlement Fund. Plaintiffs' counsel's Fee and Expense Application is consistent with or below awards made by this Court and other district courts in this Circuit as well as courts throughout the country and is the appropriate method of compensating counsel for the result they have obtained for the Class. The requested Fee and Expense Application is fair and reasonable under the applicable legal standards and in light of the contingency risk undertaken, the efforts of plaintiffs' counsel and the result achieved, and should be awarded by the Court.

### A.    The Proposed Settlement Should Be Approved Because It Is Fair, Reasonable, and Adequate

The negotiated settlement of class action litigation is generally favored by the courts. *Cf., In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001); *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990). This is particularly so with respect to complex class action litigation. *E.g., Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "Being a preferred means of dispute resolution, there is a strong presumption in favor of settlement." *In re Telectronics*, 137 F. Supp. 2d at 1008. The touchstone for court approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate and in the best interests of the class. *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *In re Telectronics*, 137 F. Supp. 2d at 1008; *Granada Investments, Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); and *In re Dun & Bradstreet*, 130 F.R.D. at 370. The settlement is then tested against a series of relevant factors. *In re Telectronics*, 137 F. Supp. 2d at 1008. The application of

these factors to the proposed Settlement before the Court, as discussed more fully herein (pp. 13-20),
weighs heavily in favor of final judicial approval.

### B.    Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees and Expenses

It is well settled that counsel, who creates a common fund for the benefit of a class, is entitled
to an allowance of fees and expenses from the fund relative to the benefit achieved. *Smillie v. Park
Chemical Co.*, 710 F.2d 271, 275 (6th Cir. 1983); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188
(6th Cir. 1974).  The core inquiry is whether an award is reasonable under the circumstances.
*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993).  The absence of
objections, although not dispositive, is a significant factor that weighs heavily in favor of a requested
fee award.  *Cf., In re General Public Utilities Sec. Litig.*, [1983-84 Transfer Binder] Fed.  Sec. L.
Rep. (CCH) ¶99,566, at 97,231-32 (D.N.J. 1983); *In re Revco Sec. Litig.*, [1992 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶96,956, at 94,072 (N.D. Ohio 1992).

The results achieved in this case, the absence of any objection, and a comparison with awards
in similar litigation from this Court as well as district courts throughout the country, demonstrate that
the fee requested here is reasonable and merits judicial approval.  *E.g., In re Telectronics Pacing
Systems, Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio 2001) (27% award plus expenses); *In re Proctor &
Gamble Company Sec. Litig.*, No. 1-00-190 (S.D. Ohio Dec. 20, 2001) (30% award including
expenses) (attached hereto as Exhibit A); *In re Nord Resources Corp. Sec. Litig.*, No.  C-3-90-380
(S.D. Ohio Apr. 28, 1994) (30% award plus expenses) (attached hereto as Exhibit B); *In re Future
Healthcare Sec. Litig.*, No. C-1-95-180 (S.D. Ohio Dec. 5, 2000) (30% award) (attached hereto as
Exhibit C); *In re Structural Dynamics Research Corp. Sec. Litig.*, No. C-1-94-630 (S.D. Ohio Mar.
22, 1996) (30% award which included expenses) (attached hereto as Exhibit D); *In re Cincinnati
Microwave, Inc. Sec. Litig.*, No. C-1-95-905 (S.D. Ohio Mar. 21, 1997) (30% fee award plus

expenses) (attached hereto as Exhibit E); *In re Valley Systems Sec. Litig.*, No. 5:92-CV-2124, (Bell, J.) (N.D. Ohio Mar. 16, 1994) (30% award plus expenses) (attached hereto as Exhibit F).

The above fee awards are in line with an analysis of fee awards in shareholder class actions conducted in 1996 by National Economic Research Associates ("NERA"), an economics consulting firm. Using data from 433 shareholder class actions, the study concluded that: "Regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinta M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996). Of the 433 settlements, 13 were in the Sixth Circuit and the average attorney fee as a percentage of the settlement was 31%. *See* Table 12b.

Plaintiffs' counsel request that the Court grant their request for attorneys' fees of 25% of the $4 million Settlement Fund plus reimbursement of out-of-pocket expenses in an amount of $250,040.65 (or 31.25% including expenses) plus interest on the award at the same rate and for the same period as earned on that portion of the Settlement Fund. The relevant factors supporting the Fee and Expense Application are discussed more fully at pp. 22-35.

## II.    STATEMENT OF FACTS

AK Steel Holding Corporation, through its wholly owned subsidiary AK Steel Corporation (collectively "AK Steel" or the "Company"), is a fully integrated producer of flat-rolled carbon steel. As alleged in the Consolidated Amended Complaint, in February 1998, AK Steel knew it had a problem. Although it had a "super patent" for aluminum and coatings on stainless steel, it could not easily access the stainless steel it needed. AK Steel could not get stainless steel domestically and pressure on Congress was mounting to impose tariffs on imported stainless steel. *Id.* Thus, AK Steel tried for over a year to acquire Armco, Inc. ("Armco") because Armco could provide AK Steel with a steady supply of stainless steel which the Company could then sell profitably. Finally, in

May 1999 it appeared that a merger between AK Steel and Armco would be possible and the two companies entered into a definitive merger agreement.

By July 15, 1999 (the start of the Class Period), AK Steel was experiencing material negative problems with regard to AK Steel's business which, if made public, would destroy the Company's stock price and interfere with its ability to merge with Armco. For instance, AK Steel did not have the ability to renegotiate the prices in the long-term contacts it had with certain customers. Thus, an expected substantial rise in raw material costs would negatively impact AK Steel because the Company would have to pay more for its materials, but could not, in turn, pass on the price increase to its customers due to the long-term nature of the contracts with most of its customers which prevented price increases until the contracts expired. In addition, because of the monitored labor issues affecting AK Steel and its financial results, Defendants were aware that there were serious labor issues affecting Armco and AK Steel manufacturing plants. As a result, AK Steel could not meet the earnings expectations Defendants were publicly declaring.

Defendants issued a press release on July 15, 1999 reporting "record" revenues for the second quarter of fiscal 1999. AK Steel was only able to report the "record" earnings because the Company had been double-shipping products to its customers, including Walker (a subsidiary of Tenneco) and Arvin. After issuing the press release, AK Steel represented to securities analysts that demand for AK Steel products remained strong and that AK Steel expected a strong fourth quarter resulting from, among other things, lower costs.

On August 25, 1999, AK Steel and Armco filed a Joint Proxy Statement/Prospectus ("Joint Proxy") as part of the Registration Statement, Form S-4A, pursuant to the merger. The Joint Proxy touted the merger as being in the best interests of both Armco and AK Steel stockholders.

In September 1999, AK Steel management engaged in a risky strategy to break the union at the Mansfield plant and lock-out the workers. AK Steel/Armco presented the workers with an

agreement they knew the workers would reject.  When the workers rejected the agreement, AK Steel implemented its plan to lock-out the workers, forcing a labor dispute.  AK Steel management told securities analysts not to discuss the Mansfield labor situation in their analyst reports.

The scheme to complete the merger was successful and the merger between AK Steel and Armco was completed on September 30, 1999, based on AK Steel's stock price of $19.59.  Despite the completion of the merger, AK Steel management still could not disclose the truth to the market because AK Steel needed to convince note holders of Armco's long-term debt not to exercise their option of requiring AK Steel to repurchase the notes.  AK Steel management continued to disseminate positive statements about AK Steel to the public and offered cash payments to holders of the notes who agreed to waive their repurchase options.

Although the price of AK Steel stock declined during mid-December 1999 on worries of stainless steel prices and demand, AK Steel management continued to represent that the Company was successful and growing, and to imply that the Mansfield labor issues were under control.

On January 25, 2000, AK Steel could conceal the truth no longer.  After the close of trading, and just two weeks after making positive public statements about the company, AK Steel shocked the market by reporting that operating costs in 2000 would be significantly higher than in 1999 due to the escalating prices of raw materials and to the expenses relating to the strike at Mansfield.  Upon these surprising disclosures, analysts cut their 2000 forecasts for AK Steel and AK Steel stock fell to $12-3/8.

### A.     The Litigation

On or after April 19, 2000, the following actions were filed in the United States District Court for the Southern District of Ohio, Western Division (the "Court"): (1) *Fidel v. AK Steel Holding Corp., et al.*, Civil Action No. C-1-00-320; and (2) *Shams v. AK Steel Holding Corp., et al.*, Civil Action No. C-1-00-349.

On June 14, 2000 the Court consolidated the two cases under the lead case *Fidel, et al. v. AK Steel Holding Corp., et al.,* and administratively terminated the *Shams v. AK Steel Holding Corp., et al.* action from the active docket of the Court. Thereafter the Court appointed Bernard Fidel and Ironwood Capital Management as Lead Plaintiffs pursuant to §21D(a)(3)(B) of the Private Securities Litigation Reform Act of 1995 and approved the selection of Milberg Weiss Bershad Hynes & Lerach LLP as Lead Counsel and Strauss & Troy as Liaison Counsel.

The operative complaint is the Consolidated Amended Complaint for Violation of the Federal Securities Laws (the "Complaint") filed August 28, 2000. The Complaint alleges that Defendants violated the federal securities laws by making material false or misleading representations and/or omissions relating to: (1) AK Steel's projections of earnings per share for fiscal 2000; (2) the extent and nature of the labor problems AK Steel was experiencing at its Mansfield plant and the effect of the labor problems on AK Steel's business; (3) the effect of increased raw material costs on AK Steel's business and how those increased costs would effect AK Steel's existing long-term contracts with its customers; and (4) double shipping of finished product to customers in order to manipulate sales figures.

On October 20, 2000, all Defendants except James F. Will filed a motion to dismiss the Complaint. Defendant Will filed a separate motion to dismiss. On September 19, 2002, the Court granted in part and denied in part Defendants' motions to dismiss. The Court dismissed the claims relating to earnings per share forecasts by Defendants and upheld the remaining allegations.

On November 4, 2002, plaintiffs filed a motion for class certification. On February 20, 2003, Ironwood Capital Management withdrew from the Litigation. After extensive briefing and class certification discovery, the Court heard oral argument. On September 18, 2003, the Court issued its Order denying plaintiffs' motion without prejudice to plaintiffs refiling the motion with a new

proposed class representative.  On October 17, 2003, plaintiffs filed a motion to intervene William Gruenke as a plaintiff in this action.  The Court granted plaintiffs' motion on November 19, 2003.

Shortly after the Court issued its order on Defendants' motions to dismiss, the parties began to discuss a resolution of this action.  The settlement negotiations were long and arduous, extending over several months.  During the on-going settlement negotiations, plaintiffs continued to diligently prosecute this litigation by filing a motion for class certification and aggressively pursuing formal discovery from Defendants and third parties which resulted in the production of tens of thousands of pages of documents which plaintiffs' counsel reviewed and analyzed.

The extensive arm's length settlement negotiations culminated in the Stipulation which provided for certification of the Class and the appointment of William F. Gruenke as class representative.  After the parties executed the Stipulation, plaintiffs moved the Court for preliminary approval of the settlement.  Thereafter, the Court entered the Preliminary Order which preliminarily approved the settlement and certified the Class.

### B.     Summary of the Settlement

The Settlement consists of $4 million in cash, plus interest.  As more fully described in the Notice, the Settlement Fund, less administration expenses, including the costs of printing and mailing the Notice, the cost of publishing the Summary Notice, the costs of processing of claims submitted, the payment of any taxes assessed against the Settlement Fund and attorneys' fees and expenses as awarded by the Court, will be distributed among the Class members pursuant to a Plan of Allocation which provides a simple and straightforward reflection of the potential damages in this Litigation.

As set forth herein, this Settlement represents the culmination of extensive litigation and hard-fought settlement negotiations, conducted by counsel well-experienced in the field of securities litigation.  In the Litigation, Defendants adamantly denied any wrongdoing and argued that

plaintiffs' allegations would not prevail. In the negotiations following the Court's decision granting in part and denying in part Defendants' motion to dismiss, Defendants continued to assert their position that plaintiffs' claims were not meritorious. Plaintiffs and their counsel are cognizant of the fact that the Court dismissed in part the Complaint. Moreover, while plaintiffs believe that the claims are meritorious, there is certainly risk as to whether plaintiffs would have prevailed at summary judgment, trial or following an appeal on any or all of the claims, and there are risks that the decline in the price of AK Steel common stock could be attributed, in whole or in part, to factors other than the alleged misrepresentations or omissions by Defendants. As a result, it is possible that plaintiffs could have recovered nothing or a fraction of the damages claimed by the Class at trial. Thus, plaintiffs and their counsel have concluded that the proposed Settlement is a very good result and clearly fair, reasonable, and adequate. The proposed Settlement is in the best interests of the Class, and therefore, it merits this Court's approval.

### C. Due Notice of the Pendency of the Class Action and of the Proposed Settlement Has Been Appropriately Given

This Court's Preliminary Order certified the Class described above. In accordance with the Preliminary Order, more than 31,000 copies of the Notice were mailed by first class mail to identifiable members of the Class. In addition, a summary notice was published in the national edition of *Investor's Business Daily* on May 4, 2004. A declaration of Gilardi & Co. LLC, the Court appointed Claims Administrator, has been filed with the Court setting forth the actions that have been taken to comply with the Notice requirements set forth in the Preliminary Order. The Notice provided detailed information to Class Members concerning: (a) the proposed Settlement; (b) the rights of Class Members, including the right and the manner in which to make objections and the right to request exclusion; (c) the background of the Litigation; (d) the Plan of Allocation of settlement proceeds; (e) the Judgment to be entered; (f) the request for attorneys' fees and reimbursement of expenses; (g) the Settlement hearing to take place before this Court; (h) the

examination of Court records should any Class member elect to do so; and (i) how to contact plaintiffs' counsel and obtain additional information about the Settlement or the Litigation.

The form of Notice used in this case was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The mailing to identifiable Class Members of the Notice by first class mail and publication of the summary notice in a well-known newspaper was the best practicable means to notify Class Members, and satisfies Rule 23. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

## III.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED BY THE COURT

### A.    The Settlement Is Fair, Reasonable, and Adequate

#### 1.    The Standards For Judicial Approval of Class Action Settlements

It is well settled that compromises of disputed claims are favored by the courts. *Williams v. First National Bank*, 216 U.S. 582, 595 (1910). "Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics,* 137 F. Supp. 2d at 1008. *See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[I]n class action suits, there is an overriding public interest in favor of settlement."); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions.").

Pursuant to Rule 23(e), a court should approve a class settlement if it is fair, adequate, and reasonable, and in the best interest of the class. *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *In re Telectronics*, 137 F. Supp. 2d at 1008; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001); *Granada Investments, Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); *Bronson v. Board of Educ.*, 604 F. Supp. 68, 71 (S.D. Ohio 1984); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 370 (N.D. Ohio 1983).

- 11 -

In determining whether a proposed settlement is fair, adequate, and reasonable, a court should look to the following factors: (1) the plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest. *In re Telectronics*, 137 F. Supp. 2d at 1009; *In re Dun & Bradstreet,* 130 F.R.D. at 371; *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Courts have consistently utilized these factors in considering the fairness, reasonableness, and adequacy of proposed class action settlements. *See, e.g., Williams*, 720 F.2d at 922; *Granada Investments*, 823 F. Supp. at 453 (*citing Bronson*, 604 F. Supp. at 73).

In making such a determination, a court should not engage in a trial or mini-trial of the merits. *Granada Investments*, 823 F. Supp. at 453. As the Second Circuit stated in *Grinnell*:

> "It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement .... Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and exercise of business judgment in determining whether the proposed settlement is reasonable."

495 F.2d at 462 (citation omitted).

The view of experienced counsel favoring the settlement is entitled to great weight. *Kogan v. Aimco Fox Chase, L.P.*, 193 F.R.D. 496, 501 (E.D. Mich. 2000) (*citing Bronson*, 604 F. Supp. at 73). A court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams*, 720 F.2d at 922-23. *See also Kogan*, 193 F.R.D. at 501. Where, as here, a settlement is endorsed as fair by experienced and sophisticated counsel after rigorous arm's-length negotiations, there is a strong initial presumption that the compromise is fair and reasonable.

When examined under the applicable criteria, this Settlement is a very good result for the Class. Plaintiffs' counsel believe that there are serious questions as to whether a more favorable monetary result against Defendants could or would be attained after trial and the inevitable post-trial motions and appeals. The Settlement achieves a prompt and certain recovery for Class Members and is unquestionably superior to the distinct possibility that were this Litigation to proceed to trial, there could be no recovery at all. Analysis of the relevant factors demonstrates that the proposed Settlement merits this Court's approval.

**B.    Evaluation of the Proposed Settlement**

**1.    The Likelihood of Success on the Merits**

One of the factors courts consider in approving a class action settlement is the plaintiffs' likelihood of success on the merits balanced against the amount and form of relief offered in settlement. *Williams*, 720 F.2d at 922. As in every complex case of this kind, plaintiffs faced formidable obstacles to recovery if litigation were to continue. The principal claims in this litigation are based upon §10(b) of the Securities Exchange Act of 1934, and Rule 10b-5, promulgated thereunder. While plaintiffs' counsel believe that they could prove the claims asserted, there is nevertheless a great deal of risk present and there was certainly no guarantees that plaintiffs would prevail at trial and ultimately collect on a larger judgment after trial and subsequent appeals.

Securities litigation generally involves complex issues of fact and law, and this case is no exception. To establish liability under §10(b), plaintiffs would bear the burden of proving, *inter alia*, that Defendants participated in the public dissemination of false or misleading information, that the information was material to investors in determining whether to invest in AK Steel stock, that the information impacted the market price of the stock, caused damage to the Class and that Defendants acted with scienter. *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) Further litigation to establish liability and damages posed a potential threat to any recovery.

As a threshold matter, plaintiffs would have to prove that Defendants made material misrepresentations and/or omissions. *See, e.g., TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Plaintiffs' counsel believe that the claims asserted have substantial merit and would be able to establish that Defendants' statements alleged to be false were in fact material misstatements or omissions made with scienter. Defendants, however, have adamantly denied any culpability throughout the Litigation. Assuming that plaintiffs' claims survived Defendants' anticipated motions for summary judgment after discovery was completed, at trial Defendants would present evidence in support of their contentions that there were no material misstatements or omissions, that they had a reasonable good faith belief in their actions at the time and that they did not act with scienter. For example, Defendants would submit evidence that the market was repeatedly warned of the potential for labor problems at Mansfield and of the possible negative impact on the Company's business. Similarly, Defendants would present evidence that the potential negative impact on the Company's business as a result of a rise in the cost of raw materials was fully disclosed to the market. Defendants would also present evidence that any statements alleged to be false or misleading were in fact true at the time they were made.

It is clear that if litigation continued, plaintiffs would face the risks of establishing liability posed by conflicting testimony and evidence. In addition, there was no certainty as to whether additional discovery would support plaintiffs' allegations. These risks would be exacerbated by the unpredictability of a lengthy and complex jury trial. It is impossible to predict whether a jury would conclude that Defendants made material misstatements with the requisite scienter. Convincing a jury of Defendants' intent to make material misrepresentations and/or omissions, which Defendants adamantly deny, is therefore subject to considerable uncertainty. This is especially true where, as here, Defendants would argue that their lack of insider trading would negate any inference of intent. Thus, if plaintiffs' claims against Defendants were to survive summary judgment and be tried to a

jury, plaintiffs faced the very real risk that the jury would find that some or all of the alleged misrepresentations and omissions were not material, that defendants acted in good faith and without the mental state necessary to satisfy the scienter requirement.

Plaintiffs also faced substantial difficulty in proving damages. Proof of damages in securities litigation requires complex expert testimony. The traditional measure of damages in an action under §10(b) is the investor's "out-of-pocket" loss. *See Randall v. Loftsgaarden*, 478 U.S. 647, 661-62 (1986). Under this measure, a defrauded purchaser may recover the difference between the price paid for the security and the "fair value" of that security (value absent fraud) as of the date of his or her purchase. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566 (2d Cir. 1982). A defendant cannot be held responsible for any decline in value of the security caused by factors unrelated to the alleged misrepresentations and omissions. *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 188 (2d Cir. 2001).

An evaluation of damages is thus based not only on stock price history but on more elusive factors including corporate asset value, cash flow, income and growth prospects for the future, industry and economic trends and a myriad of other variables. Defendants' damage expert predictably would have reached far different conclusions about the amount of damages suffered by the Class than plaintiffs' experts. One cannot predict which testimony or methodology might be accepted by the jury or which might be rejected as inherently speculative or unreliable. Therefore, in an unavoidable "battle of experts" it is impossible to predict with any certainty which arguments would find favor with a jury. *See In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) (stating that "In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *In re PaineWebber Ltd. Partnership Litig.*, 171 F.R.D. 104, 129

(S.D.N.Y. 1977) ("damages are a matter for the jury, whose determinations can never be predicted with certainty"), *aff'd,* 117 F.3d 721 (2d Cir. 1997).

Even if plaintiffs were to prevail at trial, risks to the Class remain. For example, in *In re Apple Computer Sec. Litig.*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,252 (N.D. Cal. 1991), the jury rendered a verdict for plaintiffs after an extended trial. Based upon the jury's findings, recoverable damages could have exceeded $100 million. However, weeks later, the court overturned the verdict, entering judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporate defendant. In another case, the class won a jury verdict and a motion for judgment notwithstanding the verdict was denied, but on appeal the judgment was reversed and the case dismissed. *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990). *See also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970) (overturning $145 million judgment after years of appeals), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing plaintiff's jury verdict of $81 million for securities fraud). Therefore, consideration of the above risks supports the approval of the Settlement as fair, reasonable and adequate.

### 2.    The Complexity, Expense, and Likely Duration Favors Settlement

The complexity, expense and likely duration of the litigation is another factor considered in determining the fairness of a settlement. *In re Telectronics*, 137 F. Supp. 2d at 1013; *In re Art Materials*, 100 F.R.D. at 372. There is no doubt that this securities class action involved complex factual and legal issues. As discussed above and in the Hodges Declaration, the various obstacles

with which plaintiffs would necessarily be confronted "flow from the complexities and difficulties inherently involved in shareholder securities fraud litigation." *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974). Courts have long recognized that "stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D 525, 528 (S.D.N.Y. 1973). Since the enactment of the PSLRA, "securities actions have become more difficult from a plaintiffs' perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000).

If not for this Settlement, the case would have continued to be fiercely contested by all parties. Defendants have demonstrated a commitment to defend the case through and beyond trial, if necessary, and are represented by-well respected and highly-capable counsel. The expense of continued litigation would be substantial. The parties would also have had to continue a lengthy, extensive and time-consuming discovery program involving a review and analysis of additional documents from AK Steel and non-parties that would likely number in the hundreds of thousands and an extensive deposition program. The parties would have to conduct expert discovery; inevitably, Defendants would have filed motions for summary judgment. Assuming plaintiffs' claims survived Defendants' motions for summary judgment, any trial involving some or all of the Defendants would run several weeks, and involve numerous attorneys, witnesses, experts and the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the expenditure of enormous amounts of judicial and financial resources. Even if successful at trial, appeals would be virtually assured. Taking into account the likelihood of appeal, absent the settlement, this Litigation likely would have continued for years, despite the efforts of the Court and the parties to speed the process.

Moreover, in the current corporate environment no one can predict in these unstable times whether a much larger judgment entered several years from now would be collectable. Even if the

Class were to recover a larger judgment after trial, which is certainly not guaranteed, the additional delay, through summary judgment, trial, post-trial motions and the appellate process, would deny the Class any recovery for years. The Settlement secures a substantial benefit for the Class in this highly complex and contested action, undiminished by further expenses, and without the delay, risk, and uncertainty of continued litigation. *See In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court").

### 3.    Stage of Proceedings and Extent of Discovery

To ensure that plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the settlement proposal, the stage of the proceedings and the extent of discovery is another factor which is considered in determining the fairness of the settlement. *In re Telectronics*, 137 F. Supp. 2d at 1015; *Kogan*, 193 F.R.D. at 502. In this action, both the knowledge of plaintiffs' counsel and the proceedings themselves reached a stage where an intelligent evaluation of the strengths and weaknesses of the Class' claims and the propriety of the Settlement could be made.

As set forth in the Hodges Declaration, plaintiffs' counsel conducted an exceptionally thorough investigation of the factual allegations. This investigation included an extensive review and analysis of available documents concerning AK Steel, Armco and the Merger, interviews with numerous witnesses with specific knowledge of the claims alleged as well as consultation with experts. Defendants and third parties also produced voluminous documents which were reviewed and analyzed by plaintiffs' counsel and their experts. In addition, the Settlement was only reached after the parties had fully briefed Defendants' motions to dismiss and plaintiffs' motion for class certification and the Court issued its orders on those motions.

There is no question, that plaintiffs' counsel were in an excellent position to evaluate the strengths and weaknesses of the claims asserted and defenses raised by Defendants as well as the substantial risks of continued litigation and to conclude that the Settlement provides a fair, adequate and reasonable recovery and is in the best interest of the Class. Having sufficient information to properly evaluate the case, plaintiffs' counsel have managed to settle this Litigation on terms favorable to the Class without the substantial expense, risk and uncertainty of continued litigation.

### 4. The Settlement Is the Result of "Arm's-Length" Negotiations Among Competent and Experienced Counsel

In appraising the fairness of the proposed Settlement, the Court is entitled to rely heavily on the opinion of competent counsel. *In re Telectronics*, 137 F. Supp. 2d at 1015-16; *In re Art Materials*, 100 F.R.D. at 371. This is especially true where the stage of the proceedings indicates that counsel and the Court are fully capable of evaluating the merits of plaintiffs' case and the probable course of future litigation. *See Cotton*, 559 F.2d at 1330; *Kogan*, 193 F.R.D. at 502. As set forth above and in the Hodge's Declaration, plaintiffs' counsel have conducted an extensive investigation, reviewed and analyzed tens of thousands of pages of documents produced by Defendants and third parties, consulted with experts and engaged in motion practice and are thus fully capable of evaluating the merits of their case against Defendants and the reasonableness of the Settlement.

In evaluating the proposed Settlement and the opinion of counsel, the Court may examine the negotiating process that took place between the parties to confirm that there was no collusion in reaching the Settlement. *Kogan*, 193 F.R.D. at 502-03. The Settlement is the product of intensive, arm's-length negotiations between plaintiffs' counsel and Defendants' counsel that extended over several months. During settlement negotiations plaintiffs' counsel made it very clear that while they were prepared to fairly assess the strengths and weaknesses of the claims asserted, they would continue to litigate rather than settle for less than fair value. As a result of the negotiation process,

plaintiffs' counsel – highly experienced in securities class action litigation – have made a considered judgment that the proposed Settlement is not only fair and reasonable, but under the circumstances is a very good settlement for the Class. This fact supports the Court's approval of the proposed Settlement.

### 5.    The Reaction of the Class to the Settlement

To further support approval of a settlement, courts have also looked to the reaction of the class to the settlement. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). Of course, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Id.* Moreover, "a relatively small number of class members who object is an indication of a settlement's fairness." *Id.*, *citing* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, §11.48 (3d ed. 1992).

In this case, over 31,000 copies of the Notice were mailed to Members of the Class. A summary notice was also published in the *Investor's Business Daily* to reach Class Members who might not have received a mailed Notice. To this date, no Class Member has objected to any aspect of the Settlement, the Plan of Allocation or the Fee and Expense Application. This is significant, especially considering the large size of the Class and the increasing trend of investor activism in securities class actions. *Kogan*, 193 F.R.D. at 503 ("in making this determination, the Court is greatly persuaded by the fact that none of the class members objected to the settlement agreement").

### 6.    The Public Interest Favors Settlement

As discussed above, the Settlement provides a recovery to the Class in the form of a settlement fund of $4 million plus interest. It is certainly possible that the Class might not ultimately prevail after continued litigation. *See*, *e.g.*, *Brotherton*, 141 F. Supp. 2d at 906. The Settlement puts an end to an already long and protracted litigation which absent settlement would have likely continued for several more years despite the best efforts of the parties and the Court to speed up the process.

### 7.    The Plan of Allocation is Fair and Reasonable and Should be Approved

The Notice contains a Plan of Allocation detailing how the settlement proceeds are to be divided among claiming Class Members.  A trial court has broad discretion in approving a plan of allocation.  *In re Chicken Antitrust Litig.*, 810 F.2d 1017, 1019 (11th Cir. 1987).  The test is simply whether the proposed plan, like the settlement itself, is fair, reasonable and adequate.  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983) ("The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable").

In determining whether a proposal plan is fair, courts look primarily to the opinion of counsel.  *See PaineWebber*, 171 F.R.D. at 133 ("[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information"); *see also White v. Nat'l Football League*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating that "[t]he court ... affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds), *aff'd*, 41 F.3d 402 (8th Cir. 1994).  Here, working with Lead Counsel's damage expert, Lead Counsel have developed a Plan of Allocation that reflects a simple and straightforward assessment of damages and will result in a fair distribution of the available proceeds among Class Members.

Courts also consider the reaction of a class to a plan of allocation.  *See Paine Webber*, 171 F.R.D. at 126; *Maywalt v. Parker & Parsley Petroleum Co.*, No. 92 Civ. 1152, 1997 U.S. Dist. LEXIS 97, at *11-12 (S.D.N.Y. Jan. 6, 1997).  The Notice described the proposed Plan of Allocation in detail and indicated that the deadline for objecting to the Plan was June 28, 2004.  No objections

to the Plan have yet been received.  Accordingly, the Plan of Allocation should be approved as fair,

reasonable and adequate.

## IV.    THE REQUESTED FEE AND EXPENSE AWARD IS FAIR AND REASONABLE

Plaintiffs' counsel seek an award of 25% of the Settlement Fund plus reimbursement of their

out-of-pocket expenses in the amount of $250,040.65 (or 31.25% of the Settlement Fund), plus

interest.  Notice of this request has been given to the Class and, as of the date of the filing of this

Memorandum, there has been no objection.  Counsel prosecuted this action on an entirely contingent

basis, for more than two years, placing their investment of legal time and out-of-pocket expenses

entirely at risk.  Where counsel's efforts result in the creation of a "common fund" to be shared by a

class, courts have determined that an award of fees and expenses determined as a percentage of that

fund is appropriate.

### A.    Plaintiffs' Counsel Are Entitled to a Fee From the Traditional Common Fund They Obtained

For over a century, the Supreme Court has recognized the "common fund" exception to the

general rule that a litigant bears his or her own attorneys' fees.  *Trustees v. Greenough*, 105 U.S. 527

(1882).  The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*,

444 U.S. 472, 478 (1980), as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a
> common fund for the benefit of persons other than himself or his client is entitled to a
> reasonable attorney's fee from the fund as a whole....  Jurisdiction over the fund
> involved in the litigation allows a court to prevent ... inequity by assessing attorney's
> fees against the entire fund, thus spreading fees proportionately among those
> benefited by the suit.  [Citations omitted.]

The common fund doctrine both prevents unjust enrichment and encourages counsel to

protect the rights of those who have very small claims.  The Supreme Court has emphasized that

private actions provide "'a most effective weapon in the enforcement' of the securities laws and are

'a necessary supplement to [Securities and Exchange] Commission action.'"  *Bateman Eichler, Hill*

*Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

The federal courts therefore have long recognized that fee awards in successful cases, such as the instant one, encourage the prosecution of other actions on behalf of individuals with valid claims, and thereby promote private enforcement of, and compliance with, important areas of federal and state law, including the federal securities laws. *See, e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 487, 494 (E.D.N.Y. 1968) ("Every successful suit duly rewarded encourages other suits to redress misconduct and by the same token discourages misconduct which would occasion suit"); *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) ("[C]ourts also have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce the securities laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."); *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992) ("Attorneys who bring class actions are acting as 'private attorneys general' and are vital to the enforcement of the securities laws. Accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions.").

In complex securities class actions, competent counsel for plaintiffs can be retained only on a contingent basis. Consequently, a large segment of the public would be denied a remedy for violations of the securities laws if fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken, and the delay before any compensation is received.

**B.    The Court Should Award Attorney's Fees Using the Percentage Approach**

The diligent efforts of plaintiffs' counsel have resulted in the creation of a Settlement Fund of $4,000,000 plus interest.  Courts generally favor awarding fees from a common fund based upon the percentage of the fund method.  *See Blum v. Stenson*, 465 U.S.  886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class ...."); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-66 (1939); *Central R.R.  & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Greenough*, 105 U.S. at 532.  In contrast to common fund cases, the Supreme Court has always addressed the lodestar method in the context of statutory fee shifting cases.  The lodestar in such cases is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

The PSLRA also supports using the percentage of the fund method.  *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the Court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").  Thus Congress followed the Supreme Court's lead and endorsed the efficacy of the percentage approach to fee awards in common fund cases.

Consistent with Supreme Court authority, the Sixth Circuit has also held that the percentage approach is a proper method for determining attorneys' fees awards in common fund cases.  *E.g.*, *Rawlings v. Prudential Bache-Properties, Inc.*, 9 F.3d 513, 515-516 (6th Cir. 1993); *In re F&M Distrib., Inc. Sec. Litig.*, No. 95-CV-71778, 1999 U.S.  Dist.  LEXIS 11090, *8 (E.D.  Mich.  June 29, 1999).  The Sixth Circuit is not alone in its use of the percentage approach.  The vast majority of

other Circuits recognize the propriety of percentage fee awards in common fund cases and the

shortcomings of the lodestar/multiplier method.[1]  For example, the District of Columbia Circuit held:

> [w]e adopt a percentage-of-the-fund methodology ... because it is more efficient,
> easier to administer, and more closely reflects the marketplace.

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993).  The Eleventh Circuit rejected

the lodestar approach in all common fund cases, making the percentage method mandatory.  In

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), the court reversed a fee

order that used the lodestar/multiplier method, relying upon statutory fee-shifting principles.  The

court concluded:

> After reviewing *Blum*, the [Third Circuit] Task Force Report, and the foregoing cases
> from other circuits, we believe that the percentage of the fund approach is the better
> reasoned in a common fund case.

*Id.* at 774.

Virtually every Circuit has approved the percentage method for determining attorneys' fees

in common fund cases.  *See*, *e.g.*, *In re Thirteen Appeals Arising out of San Juan Dupont Plaza*

*Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d

Cir. 1999); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768,

821-22 (3d Cir. 1995); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *Johnston v.*

*Commerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Chemical Bank v, City of Seattle (In re*

*Washington Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Gottlieb v.*

*Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage approach and holding that use of

lodestar/multiplier was abuse of discretion); *Camden I*, 946 F.2d at 774 ("Henceforth in this circuit,

---

[1]      These shortcomings are discussed in Report of the Third Circuit Task Force, *Court Awarded
Attorney Fees*, 108 F.R.D. 237, 246-49, 254-59 (Oct. 8, 1985) (concluding that there is a widespread
belief that the deficiencies of the lodestar/multiplier method "either offset or exceed [its] benefits"
and urging use of the percentage method in all common fund cases).

attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *Swedish Hosp. Corp.*, 1 F.3d at 1271 (percentage of the fund is the only permissible measure of awarding fees in common fund cases).

### C.    The Requested Fee Award Is Well Within the Applicable Range of Percentage of Fund Awards

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive on-third of whatever the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") Fee awards in the range of 25% or more are typical in common fund cases.[2] Plaintiffs' counsel's request for attorneys' fees of 25% of the $4 million Settlement Fund is well within the range of numerous prior percentage awards made in this court and District as well as in courts throughout the country. In fact, as set forth above, the requested fee falls below the analysis of fee awards in securities class actions conducted by NERA. Moreover, a Federal Judicial Center Study conducted in 1996 which covered all class actions in four selected district courts with a

---

[2]    *See In re Future Healthcare Sec. Litig.*, No. C-1-95-180 (S.D. Ohio Dec. 5, 2000) (30% fee awarded) (Ex. C); *In re Valley Sys. Sec. Litig.*, No. 5:92cv2124 (N.D. Ohio Mar. 16, 1994) (30% award plus expenses) (Ex. F); *In re Nord Resources*, No. C-3-90-380 (S.D. Ohio Apr. 28, 1994) (awarding 30%) (Ex. B); *In re Structural Dynamics Research Corp. Sec. Litig.*, No. C-1-94-630 (S.D. Ohio Mar. 22, 1996) (30% award which included expenses) (Ex. D); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986); *In re Cincinnati Microwave, Inc. Sec. Litig.*, No. C-1-95-905 (S.D. Ohio Mar. 21, 1997) (30% plus expenses) (Ex. E); *In re Gibson Greetings Sec. Litig.*, No. C-1-95-265 (S.D. Ohio Feb. 7, 1997) (33% awarded plus expenses) (Ex. G). *See also Griffin v. Medpartners, Inc.*, No. CV98-297 (Cir. Ct. Ala. July 10, 1999) (awarding 33% of $56 million common fund, plus expenses); *In re F&M Distrib.*, 1999 U.S. Dist. LEXIS 11090, at *5 (awarding 30% fee); *Lachance v. Harrington*, 965 F. Supp. 630, 648-49 (E.D. Pa. 1997) (awarding 30% fee).

high number of class actions found that the median rate for attorneys' fees ranged from 27%-30%.

Thomas E. Willging, Laurel L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Find Report to the Advisory Committee on Civil Rules*, (Federal Judicial Center 1996).

In addition, the Notice mailed to members of the Class specifically indicated that plaintiffs' counsel would apply for a fee award of twenty-five percent of the Settlement Fund plus reimbursement of expenses not to exceed $290,000 and that any Class member could object to the fee application. No member of the Class has objected to plaintiffs' counsel's request for an award of attorneys' fees and expenses. This fact strongly evidences that the fee request is fair and reasonable. *See Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995) (citing *Weiss v. Drew Nat'l Corp.*, 465 F. Supp. 548, 551 (S.D.N.Y. 1979)); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990); *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 695 (M.D. Ala. 1988).

### D.    Fee Awards in the Sixth Circuit

The Court of Appeals for the Sixth Circuit has not expressly directed a preference for either the percentage approach or the lodestar method in common fund cases. *See Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 517 (6th Cir. 1993) (recognizing the growing trend towards adoption of a percentage approach in common fund cases, but declining to adopt a hard and fast rule applying the percentage approach in common fund cases). The standard set by the Sixth Circuit is whether an award is reasonable under the circumstances. *Id.* Recognizing that the Sixth Circuit had not directed a preference, the court in *Revco Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,956 (N.D. Ohio May 5, 1992) articulated certain concerns with a strict lodestar system:

> [I]t discourages the early settlement of cases and it forces the judicial system to carefully inspect fee applications .... Moreover, "use of the lodestar approach provides no disincentive for throwing as much effort as possible into the fray.... Rather than encourage the best monetary return for the class, there is the obvious

distraction that the faster the meter runs, the more profitable the undertaking will be for counsel. Under the lodestar approach, there is no reason to use the least expensive service. Quite the opposite is true." *Mokover v. Neco Enterprises, Inc.*, No. 89-0505B, 1992 WL 41555, at *5 (D.R.I. Mar. 2, 1992). The percentage of the fund approach is being readopted by many courts because it "encourages early settlement and provides a fair and equitable means of determining attorney's fees. Furthermore, the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured." Id. at *4. While the amount of hours invested remains a factor, the Court need not be concerned with the integrity of each "timekeeper." The time spent by counsel can become a significant factor in cases where a large settlement is achieved in a small amount of time. It could be compensated for the same work.

*Id*. at 94,069.

In determining the "reasonableness" of attorneys' fees, the Sixth Circuit identified six relevant factors for consideration:

1.     the value of the benefit rendered to the corporation or its stockholders;

2.     society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

3.     whether the services were undertaken on a contingent fee basis;

4.     the value of the services on an hourly basis;

5.     the complexity of the litigation; and

6.     the professional skill and standing of counsel on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *See also Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983). By applying the *Ramey* factors to the Fee and Expense Application, this Court reasonably may conclude that the requested fee is fair and reasonable. In addition, this Court will conclude that the percentage of the fund requested is justified under the circumstances of this case.

### E.    Application of the *Ramey* Factors

#### 1.    The Value of the Benefit Achieved

Plaintiffs' counsel have secured a settlement that provides for a cash payment of $4,000,000 plus interest for the benefit of the Class without the assistance of any governmental or regulatory agency. While plaintiffs believe that their claims have substantial merit, if litigation were to continue, there is a significant risk that the Class could recover nothing.[3] This Settlement eliminates the significant risk of no recovery from the Defendants years from now. As a result of the Settlement, Class Members will receive compensation for their losses in AK Steel stock and avoid the substantial expense and uncertainty of continued litigation. The recovery therefore merits the requested fee award.

#### 2.    Public Policy Considerations

Plaintiffs' counsel in complex securities class action litigation are invariably retained on a contingent basis, largely due to expense. The typical class representative is unlikely to be willing to pursue long and protracted litigation at his or her own expense knowing that others similarly situated will benefit from the collateral efforts of his or her litigation. Furthermore, the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are almost required for such cases. Adequate compensation to encourage attorneys to assume the risk of litigation is in the public interest. Indeed, without adequate compensation for plaintiffs' counsel, victims of securities fraud would be prevented from pursuing their claims. Thus an important factor under *Ramey* is "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others." *Ramey*, 508 F.2d at 1196. *See also White v. Abrams*, 495 F.2d 724, 730-31 (9th Cir. 1974); *Bleznak v. C.G.S. Scientific Corp.*, 387 F. Supp. 1184, 1189 (E.D. Pa. 1974).

---

[3]    The risks of the litigation are discussed in more detail *supra*, at pp. 13-18 and in the Hodges Declaration.

In *In re Warner Communications Sec. Litig.*, Judge Keenan described the public policy considerations involved in adequately compensating securities class action lawyers:

> The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged.

> *  *  *

> Fair awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance.

618 F. Supp. 735, 750-51 (S.D.N.Y. 1985) (citations omitted). Other courts have expressed similar views. *See*, *e.g.*, *Basile v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 640 F. Supp. 697, 702 (S.D. Ohio 1986); *In re Dun & Bradstreet*, 130 F.R.D. at 373. Without the willingness of plaintiffs' counsel to assume the task, members of the Class would not have recovered. As actionable securities fraud exists and society benefits from strong advocacy on behalf of security holders, public policy favors the granting of the Fee and Expense Application.

### 3.    The Risks of Litigation and the Contingent Nature of the Fees

Plaintiffs' counsel assumed a significant risk that Defendants would defend the action successfully and the Class would recover nothing. Despite the diligent efforts undertaken by plaintiffs' counsel, success was never guaranteed. As the Fourth Circuit explained in *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967):

> The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services.

> There is inherent risk in securities fraud class action litigation:

> For what it is worth, however, the empirical evidence indicates that a relatively high proportion of class actions are not settled, but disposed of in defendant's favor on preliminary motions. *See* Committee on Commerce, United States Senate, *Class Action Study*, 93d Cong., 2d Sess. (1974). Committee Print at 9-10. On the basis of the evidence before it, the Commerce Committee concluded that the class action was not a particularly effective vehicle for coercing settlements.

*Blackie v. Barrack*, 524 F.2d 891, 899 n. 15 (9th Cir. 1975). At the time that plaintiffs' counsel undertook to prosecute this action, plaintiffs' counsel understood the substantial risk of legal time they would assume without any assurance of being compensated for their efforts. In view of the skill of Defendants' counsel and the legal and factual difficulties of this action, the risk was substantial. Indeed as noted above, securities cases have always been complex and difficult and the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. If plaintiffs' counsel were unable to settle this action or otherwise prevail on the merits, the loss of time and effort would have been enormous.

In addition, plaintiffs' counsel prosecuted this action on a wholly-contingent basis. There are numerous cases where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation. Plaintiffs' counsel are aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel. Indeed, surviving a motion to dismiss, as plaintiffs did in this case, is no guarantee of success. For example, there are many appellate decisions affirming summary judgment and directed verdicts for defendants in securities class actions.[4] The contingent nature of counsel's compensation

---

[4]    *See In re Digi Int'l, Inc. Sec. Litig.*, 14 Fed. Appx. 714 (8th Cir. 2001); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Longman v. Food Lion Inc.*, 197 F.3d 675 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999); *Levitin v. PaineWebber, Inc.*, 159 F.3d 698 (2d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *Silver v. H&R Block*, 105 F.3d 394 (8th Cir. 1997). Moreover, even plaintiffs who succeed at trial may find their judgment overturned on appeal. *See, e.g., Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc) (reversing plaintiffs' verdict for securities fraud and ordering entry of judgment for defendants); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir.

is a prime factor in approving a substantial upward adjustment of the lodestar. *Ramey*, 508 F.2d at 1196-1197; *Revco*, ¶95,956, at 94,071; *Basile*, 640 F. Supp. at 702; *In re Dun & Bradstreet*, 130 F.R.D. at 372; *In re Art Materials Antitrust Litig.*, MDL No. 436, 1983 U.S. Dist. LEXIS 10434 (N.D. Ohio Dec. 27, 1983). *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 164 (S.D.N.Y. 1989) ("contingent fee risk is the single most important factor in awarding a multiplier").

Losses such as those described above are exceedingly expensive, and may threaten the survival of a law firm. Onlookers often focus on the aggregate fees awarded but fail to take into consideration that those fees are used to cover enormous overhead expenses incurred during the course of the litigation, are taxed by federal, state and local authorities, and, when reduced to a bottom line, are far less imposing to each individual involved than the aggregate fee awarded appears. Lawyers who specialize in contingent matters live in a world of uncertainty. Changes in the law through legislation or judication decree can be catastrophic, frequently affecting contingent counsel's entire inventory of pending cases. These are real threats.

### 4. The Value of Services on an Hourly Basis

The Sixth Circuit requires district courts to compare the requested fee with the value of the services rendered on an hourly basis. In circuits that require the use of the percentage of the fund method, this comparison is often referred to as the lodestar cross-check, and requires the district court to examine the degree to which the proposed fee differs from the lodestar. *See, e.g., In re Safety Components Int'l, Inc.*, 166 F. Supp. 2d 72, 102 (D.N.J. 2001) (applying lodestar cross-check). The critical factor in this analysis is the multiplier, which is the factor by which the lodestar must be multiplied in order to reach the fee proposed under the percentage of the fund method.

---

1988) (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (same).

Plaintiffs' counsel have expended approximately 2,800 hours in the prosecution of this action. The combined lodestar of their time, representing work by attorneys from both Lead and Liaison Counsel is $886,730.50, not including expenses. Under the lodestar method, a multiplier is typically applied to the lodestar in recognition of the contingency risk as well as other factors. *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 1029, 1041 (S.D. Ohio 2001); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 716 (E.D.N.Y. 1989) ("The most significant factor in the calculation of an upward adjustment is the risk of the litigation.") (citation omitted).

Here, the multiplier associated with the proposed fee is a 1.12 multiplier. Given the risks involved and the result achieved for the members of the Class, a small multiplier is fully justified. *See Rawlings*, 9 F.3d at 517 (approving the district court's use of a multiplier of 2 in a securities case in which the matter was "settled without any protracted litigation."). The multiplier here also compares favorably to other decisions in the Sixth Circuit. *See, e.g., Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) (granting fee award that under percentage of fund approach represented a multiplier between 2.4 and 2.6); *In re Dun & Bradstreet*, 130 F.R.D. at 372-74 (granting percentage of fund award that represented multiplier of approximately 2.5); *Fournier v. PFS Invs.*, 997 F. Supp. 828, 831-32 (E.D. Mich. 1998) (district court permitting multiplier over 2.0 under percentage of fund method in securities case). Higher multiples have been awarded as well. *See Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier); *In re RJR Nabisco Sec. Litig.*, No. 818, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) (6 multiplier); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (multiplier of 5 awarded); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier); *Wilson v. Bank of Am. Nat'l Trust & Sav. Ass'n*, No. 643872 (Cal. Super. Ct. Aug. 16, 1992) (awarding fee multiples of up to 10 times hourly rates)).

### 5.    The Complexity of the Litigation

Prosecution of any securities class action presents inherently complex and novel issues.

>       The benefit to the class must also be viewed in its relationship to the complexity, magnitude and novelty of the case....

>       Despite years of litigation, the area of securities law has gained little predictability.  There are few "routine" or "simple" securities actions.  Courts are continually modifying and/or reversing prior decisions in an attempt to interpret the securities laws in such a way as to follow the spirit of the law while adapting to new situations which arise.  Indeed, many facets of securities law have taken drastically new directions during the pendency of this action.

>       The complexity of a case is compounded when it is certified as a class action....  Management of the case, in and of itself, is a monumental task for counsel and the Court.

*Miller v. Woodmoor Corp.*, [1979 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,853 at 95,469 (D. Colo. Sept. 28, 1978).  *See also In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 632 (D. Colo. 1976) (securities litigation involves "unique and substantial issues of law in the technical area of SEC Rule 10b-5, ... difficult, complex, and oft-disputed class action questions, and difficult questions regarding computations of damages.").

While courts have always recognized that securities class actions carry significant risk, the adoption of the PSLRA has made the successful prosecution of these cases even more complex and uncertain.  Because of the applicability of the PSLRA, numerous developing issues were presented in this case.  Had this Settlement not been achieved, the complex factual and legal questions at issue would have continued to be the subject of substantial disagreement among the parties.  Given the inherent complexities of a securities class action and the added difficulties faced now in bringing cases under the PSLRA, the fee requested is fair.

### 6.    The Quality of the Representation

Plaintiffs' counsel are nationally known leaders in the fields of securities class actions and complex litigation.  The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient prosecution and resolution of the action.  The quality of

opposing counsel is also important when the court evaluates the services rendered by plaintiffs' counsel. *See, e.g.*, *Warner Communications*, 618 F. Supp. at 749; *King Resources*, 420 F. Supp. at 634; *Arenson v. Board of Trade*, 372 F. Supp. 1349, 1351 (N.D. Ill. 1974). Prominent and extremely capable Cincinnati and New York counsel represented Defendants and vigorously defended this action. The ability of plaintiffs' counsel to obtain a favorable result for the Class in the face of such formidable opposition further evidences the quality of their work.

Finally, the Notice mailed to members of the Class specifically indicated that Lead Counsel would apply for a fee award of twenty-five percent of the Settlement Fund and expenses not to exceed $290,000, and that any Class member could object to the fee and expense application. Thus far, no member of the Class has objected to plaintiffs' counsel's request for an award of attorneys' fees and reimbursement of expenses. This fact provides further evidence that the fee and expense request is fair and reasonable. *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990); *Mashburn*, 684 F. Supp. at 695.

Thus, there can be no dispute that all of the factors discussed above weigh in favor of the fee and expense award requested, and that the Court should grant plaintiffs' counsel's fee and expense application in its entirety.

### F.    Plaintiffs' Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Plaintiffs' Counsel also requests reimbursement of expenses incurred by plaintiffs' counsel in connection with the prosecution of this litigation. Lead Counsel and Liaison Counsel have submitted separate declarations attesting to the accuracy of their expenses.

Lead and Liaison Counsel have incurred expenses in the aggregate amount of $250,040.65 in prosecuting this Litigation.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to

paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted). Therefore, it is proper to reimburse reasonable expenses even though they are greater than taxable costs. *Id. See also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted). *TBK Partners, Ltd. v. Warshow*, [1977-78 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,196 at 92,402 (S.D.N.Y. Oct. 5, 1977) (court noted in securities action that "[o]f course, [Plaintiff's counsel] are also entitled to reimbursement for their expenses."). The categories of expenses for which counsel seek reimbursement here are the type of expenses routinely charged to hourly clients and, therefore, should be reimbursed out of the common fund.

A significant component of plaintiffs' counsel's expenses is the cost of experts, consultants and investigators.

In the post-PSLRA era the use of investigators to gather detailed fact-specific information from percipient witnesses in order to plead complaints that will survive motions to dismiss is a necessity. These in-house and private investigators conducted a substantial amount of work on behalf of the Settlement Class. They were able to identify, locate and interview numerous witnesses who had knowledge of the alleged wrongdoing. Lead Counsel and/or their investigators interviewed numerous witnesses with specific knowledge of plaintiffs' allegations. Lead Plaintiffs' counsel used the fruits of this extensive investigation to plead fact specific complaints, identify additional

witnesses with relevant information concerning the alleged wrongdoing, evaluate the strengths and weaknesses of plaintiffs' case and assist in settlement negotiations. The investigators were instrumental in helping plaintiffs achieve this result for the benefit of the Class.

Plaintiffs' counsel also incurred expenses of in-house and outside economic and damage consultants. These in-house and outside damage consultants performed several important tasks for counsel, including calculating shares available to trade and preliminary damages analysis under different scenarios. They also reviewed and analyzed SEC filings for insider selling and vesting options to determine the extent and amount of the number of shares sold during the Class Period by each individual Defendant, researched AK Steel's stock price activity and compared it with other companies in its peer group in preparing damage analyses and prepared the Plan of Allocation of settlement proceeds. These consultants provided significant services on behalf of the Class and their expenses were necessarily incurred for the successful prosecution of this Litigation.

Other expenses include the costs of computerized research. These are the charges for computerized factual and legal research services including LEXIS, Westlaw, Dow Jones, Disclosure, Inc., CDA Investment Technologies, Pacer Service Center and Choice Point. It is standard practice for attorneys to use these services to assist them in researching legal and factual issues. These services allowed counsel to access AK Steel's SEC filings, perform media searches on AK Steel, obtain analysts' reports on AK Steel, assist in developing plaintiffs' damage analyses and allowed the investigators to locate and obtain information on witnesses and Defendants.

Plaintiffs' counsel were also required to travel in connection with this Litigation and thus incurred the related costs of meals, lodging and transportation. Counsel in this case traveled to conduct witness interviews and to appear before the Court for hearings.

Counsel are also seeking reimbursement of expenses incurred by reason of plaintiffs' compliance with the PSLRA, 15 U.S.C. §78u-4(a)(3)(A)(i), which requires that, within 20 days after

the date on which a class action is filed under the PSLRA, "the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." Because this was a necessary expense incurred by plaintiffs' counsel, it should be reimbursed.

Other expenses that were necessarily incurred in the prosecution of this Litigation include expenses for photocopying, filing and witness fees, postage and overnight delivery, and telephone and telecopier expenses.

## V.    CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that the Court (i) approve the Settlement as fair, reasonable and adequate; (ii) approve the Plan of Allocation; and (iii) grant the Fee and Expense Application in the amount of 25% of the Settlement Fund plus reimbursement of $250,040.65 in expenses (or 31.25% of the Settlement Fund including expenses), plus interest earned thereon at the same rate and for the same period as that earned on that portion of the Settlement Fund until paid.

Dated: July 2, 2004

s/Richard S. Wayne
Richard S. Wayne Attorney Bar Number 0022390
s/William K. Flynn
William K. Flynn Attorney Bar Number 0029536
STRAUSS & TROY
150 East Fourth Street
Cincinnati, OH  45202-4018
Telephone: 513/621-2120
email: *rswayne@strausstroy.com*
email: *wkflynn@strausstroy.com*
*Liaison Counsel*

LERACH COUGHLIN STOIA & ROBBINS LLP
William S. Lerach
Helen J. Hodges
Edward P. Dietrich
Scott H. Saham
Tricia L. McCormick
401 B Street, Suite 1700
San Diego, CA 92101
(619) 231-1058 – phone
(619) 231-7423 – fax
*Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court; has been sent electronically this 2nd day of July, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parities may access this filing through the Court's system. If a party is not given notice electronically through the Court's system a copy will be served by ordinary United States mail, first class postage prepaid, this 2nd day of July, 2004.

Dated: July 2, 2004                     s/Richard S. Wayne
                                        Richard S. Wayne Attorney Bar Number 0022390

45688.855.434379.1

- 39 -